(Nos. 24565, 24620.— No. 24662.—

The People *ex rel.* Horace G. Lindheimer, County Collector, Appellee, *vs.* Richard H. Schweitzer, Appellant.— The People *ex rel.* Horace G. Lindheimer, County Collector, Appellee, *vs.* The W. S. and S. H. McCrea Estate, Appellant.—The People *ex rel.* Joseph L. Gill, County Collector, Appellant, *vs.* Florence E. Menefee, Appellee.

*Opinion filed June 20, 1938—Rehearing denied October 21, 1938.*

Farthing and Stone, JJ., dissenting.

356

ROBERT N. HOLT, SCOTT, MACLEISH & FALK, and ADELBERT BROWN, (RICHARD C. BECKETT, ROBERT S. CUSHMAN, POMEROY SINNOCK, GEORGE P. FOSTER, CHARLES M. HAFT, and PAUL S. DAVIS, of counsel,) for appellants, Richard H. Schweitzer *et al.*, and for appellee, Florence E. Menefee.

THOMAS J. COURTNEY, State's Attorney, and BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, NORMAN N. EIGER, and J. HERZL SEGAL, of counsel,) for the county collector, appellee and appellant.

Mr. JUSTICE ORR delivered the opinion of the court:

The Cook county collector applied to the county court for judgment and order of sale for delinquent taxes for the year 1935 in two cases—one against Richard H. Schweitzer, the other against the W. S. and S. H. McCrea Estate. Objections filed in both cases to the taxes extended by the city of Chicago pursuant to supplemental appropriation and levy ordinances adopted in 1935 were overruled and judgment was then entered in each case in favor of the collector. In a third case against Florence E. Menefee, a similar objection was sustained by the court, along with an additional objection to the levy made by the city for the payment of refunding bonds. Appeals have been taken directly to this court by the objectors in the first two cases and by the county collector in the third, and we ordered the cases consolidated for hearing and decision because of the similarity of issues involved.

The city of Chicago passed its annual appropriation ordinance for the year 1935 on January 4 of that year. On January 22, it adopted its annual tax levy ordinance. The legislature, on July 12, 1935, adopted several statutes increasing the amounts which might be levied by the city of Chicago for various purposes and authorized the adoption of supplemental appropriation and levy ordinances. (Ill.

Rev. Stat. 1937, chap. 24, par. 123, (corporate purposes fund) ; chap. 24, par. 697a, (judgment fund) ; State Bar Stat. 1935, chap. 24, par. 586, (municipal tuberculosis sanitarium fund) ; chap. 81, par. 1, (library fund).) On July 22, 1935, the city adopted a supplemental appropriation ordinance and on August 2, adopted its supplemental levy ordinance. The pertinent provisions of the original and supplemental ordinances are summarized in the following table:

| FUND | Original Levy | Maximum rate at date original levy adopted | Rate multiplied by assessed valuation of $2,035,513.627 | Alleged Excess of Original Levy | Supplemental Levy |
|---|---|---|---|---|---|
| 1. Corporate | $30,929,713.74 | $1.29 | $26,258,125 | $4,671,588.74 | $5,070,286.26 |
| 2. Judgments | 800,000.00 | .03 | 610,654 | 189,346.00 | 450,000.00 |
| 3. T. B. Sanitarium | 1,678,356.56 | .07 | 1,424,859 | 253,497.56 | 821,643.44 |
| 4. Library | 1,438,591.34 | .06 | 1,221,308 | 217,283.34 | 361,408.66 |

Issue is raised concerning the power of the legislature to provide lump sum instead of maximum rate limitations for cities with a population over 150,000. Because these statutes change existing methods of taxation and apply only to cities with a population greater than 150,000, they are alleged to be local and special laws, violating section 22 of article 4 of the constitution. We have frequently held that under this section "it is within the power of the legislature to classify cities on the basis of population and enact laws applicable to each class, where there is a reasonable basis for the classification in view of the object and purposes to be accomplished by the legislation." (*People* v. *DeKalb and Great Western Railroad Co.* 256 Ill. 290.) The fact that the city of Chicago is the only city now within the designated class is no objection if the act can be reasonably applied to any municipalities which may become subject to its provisions in the future. (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504.) These statutes do not require or per-

mit the city of Chicago or any other city to which they may become applicable in the future, to automatically levy the permitted amounts, regardless of corporate necessities. It must be remembered that the power to levy taxes is also restricted to the actual and necessary expenses of government. The question thus is narrowed to an inquiry whether there is any valid reason for expressing tax limitations for cities of over 150,000 population in terms of maximum sums and those for other cities in terms of maximum rates.

It must be conceded, we believe, that the levy and collection of taxes in large urban centers present problems unlike those existing in other parts of the State. As we said in *Mathews* v. *City of Chicago,* 342 Ill. 120, "the methods required for the collection, care and disbursement of the comparatively small amounts required by the much smaller municipalities throughout the State would be entirely inefficient for the much larger amounts involved in these larger municipalities, and * * * the complex financial and business organization for the larger municipalities would be either impracticable or unnecessarily burdensome and expensive for the smaller," etc. The "Budget law" applicable to cities over 150,000 (Ill. Rev. Stat. 1937, chap. 24, par. 102) requires the taxing authorities to estimate the assets available for appropriation and prohibits them from authorizing or making any expenditure in excess of the estimate of their available assets. By fixing maximum tax limits in terms of amounts of taxes that may validly be raised for various purposes, the legislature has enabled the taxing authorities to determine in advance whether the budget they propose to adopt will comply with the law. It may be true, as objectors urge, that a similar system would be desirable in all taxing units throughout the State, but there is no evidence in the record to show that the present system has broken down so completely elsewhere as it has in Chicago. In the absence of such evidence, it is a reasonable assumption that the legislature found the existing method

of expressing tax limitations in terms of rates adequate elsewhere but inadequate in Chicago, at present the only city with a population greater than 150,000. We believe this is a valid basis for the adoption of the classification.

It is further asserted that the statutes authorizing the supplemental levies in question violate section 10 of article 9 of the constitution which prohibits the legislature from levying taxes upon municipalities for corporate purposes. Our decision in *People* v. *Baum,* 367 Ill. 249, is cited by objectors in support of this argument. We construed the effect of the *Baum case* upon legislation of this type in *People* v. *Gaylord Building Corp. post,* p. 371, decided at this term, and do not deem it necessary to repeat at length the reasoning there adopted. It is sufficient to point out that section 10 of article 9 does not prohibit the enactment of enabling acts authorizing supplemental tax levies where the adoption of such levies rests in the discretion of local taxing authorities, unless it is apparent that a so-called enabling act is a mere scheme to validate levies originally illegal. No such scheme is apparent in the present case, and section 10 of article 9 was not violated. *People* v. *Mills Novelty Co.* 357 Ill. 285.

One further objection remains—that of Florence Menefee (cause No. 24662) to the 1935 taxes levied by the city of Chicago for refunding bonds. On July 14, 1932, the city levied $15,059,000 for payment of all bonds due January 1, 1934. Because of the delay in the collection of these taxes, refunding bonds in the amount of $15,000,000 were issued on December 6, 1933, and an annual tax was ordered levied during 1935, 1936, 1937 and 1938 to accumulate a sufficient amount to pay them. Subsequently, $7,500,000 of the receipts of the 1932 tax levy for the original bonds was used to pay a like amount of the refunding bonds. On May 22, 1935, an ordinance was passed authorizing the issuance of a second series of refunding bonds with a lower interest rate to refund the $7,500,000 in original refunding

bonds which remained unpaid. The second series of refunding bonds was to mature in 1951 and 1952, the city reserving the right to redeem them at an earlier date, and provision was made for an anual levy from 1935 to 1950 to accumulate a sinking fund sufficient to pay the second series of bonds. It was also provided that taxes levied to pay the first series of refunding bonds should abate and that money available from uncollected taxes levied in prior years to pay the original indebtedness represented by the second series of refunding bonds should be accumulated and used to purchase or to pay them at maturity.

The People admit that the 1935 tax levy to provide funds for the payment of the second series of refunding bonds, and the annual tax levy in 1932 for the payment of the original indebtedness represented by these bonds, are cumulative levies for the same debt. They contend, however, that this action was necessary under the provisions of the constitution and statutes applicable here. Section 12 of article 9 of the constitution provides that "any * * * municipal corporation incurring any indebtedness * * * shall before, or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." This section is authority for the tax levied in 1932. Section 2 of the Refunding Bond act (Ill. Rev. Stat. 1937, chap. 24, par. 662.2) provides that "The ordinance or resolution authorizing refunding bonds shall prescribe all details thereof and shall provide for the levy and collection of a direct annual tax upon all the taxable property within such municipality or taxing district sufficient to pay the principal thereof and interest thereon as it matures." This section is authority for the tax levied in 1935. The rule is that double taxation will never be presumed, and before that effect will be given a statute it must unmistakably appear that the legislature so intended it.

(*New York Central Railroad Co.* v. *Stevenson,* 277 Ill. 474.)
The taxes in question were imposed alike on all the prop-
erty in the district and were levied during different taxing
periods. They, therefore, were not objectionable under the
constitution, (Cooley on Taxation, (4th ed.) 223; 61 Corpus
Juris, p. 137;) and the county court erred in not so holding.

The judgments of the county court in No. 24565 and
No. 24620 are affirmed; its judgment in No. 24662 is re-
versed, and the cause is remanded, with directions to over-
rule the objections.

*Judgments affirmed in No. 24565 and No. 24620;*
*Judgment reversed in No. 24662 and cause re-*
*manded, with directions.*

Mr. Justice Farthing, dissenting:

I cannot agree with the conclusions reached in this case
and in *People* v. *Gaylord Building Corp. post,* p. 371. In
both cases the original levy was illegal. The fact that in
the same taxing year the legislature passed the act in ques-
tion, and that this was followed in that year by the adoption
of the appropriation and levy ordinances, is not enough to
distinguish the two cases from *People* v. *Baum,* 367 Ill.
249. It makes no difference that in the *Baum case* the
amount subsequently levied was approximately the same as
the amount authorized by the legislature as a lump sum and
also the approximate amount of the illegal levy. In the cases
here, the lump sum authorization was greater than the illegal
excess contained in the original levy, and the additional
amounts appropriated and levied by the subsequent ordi-
nances were also larger than the illegal levies, but this in
no way prevents the act passed by the legislature from being
a validating act. The factual situation presented in *People*
v. *Mills Novelty Co.* 357 Ill. 285, was entirely different. In
that case, within the same taxing year, the legislature au-
thorized an increased rate of taxation and also the passage
of supplemental appropriation and levy ordinances. For

this reason, the case is not applicable because there could be no hint of an effort to validate an illegal levy.

There is nothing in our decision in *Mathews* v. *City of Chicago*, 342 Ill. 120, to support the holding in this case, that a statute authorizing a lump sum levy in cities of larger population, the only one of the size named being Chicago, is based on a sufficient difference in situation to keep the act from being arbitrary and illegal. The complicated financial set-up in a large city has no bearing whatever upon a lump sum levy. The lump sum could be more easily divided by the total assessed valuation in a smaller city, but in both cases the matter is only a problem in long division. The result to be obtained has no relation to the end sought to be obtained, and there is no sufficient basis for the difference in classification. This, in my opinion, results in an arbitrary and, therefore, illegal classification of cities.

Mr. JUSTICE STONE, also dissenting.