# Unemployment Compensation Commission et al. v. Savage et al.

May 24, 1940.

W. B. Ardery, Judge.

302

Hubert Meredith, Attorney General; A. E. Funk and Jesse K. Lewis, Assistant Attorneys General, and Robert B. Hensley for appellants.

Robert P. Hobson; Woodward, Dawson & Hobson, Troy D. Savage and E. C. Hammonds for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

The Kentucky Unemployment Compensation Act (hereinafter referred to as "the Act") enacted at the 4th Extraordinary session of the 1936 General Assembly, c. 7, repealed and re-enacted by Chapter 50 of the

Act of 1938, now appearing in the Kentucky Statutes Supp. 1939 as sections 4748g-1 et seq. and as amended by the 1940 General Assembly, sets up a comprehensive plan for providing unemployment benefits to workers in covered employment. Subject employers include all who employ four or more workers in covered employment, to as many as four of whom at least $50 in wages was payable in each of three quarters of the preceding calendar year.

Employers, at the present time, are required to pay 2.7% of the amount of their payrolls into a fund known as the Unemployment Insurance Fund, which is to be administered "separate and apart from all public money or funds of the State", but this rate of contribution is subject to later revision in the light of experience in accord with methods prescribed in the Act. Each employee is required to contribute one percent of his wages to the fund, subject to certain qualifications which might cause a slight reduction in this rate. This fund is on deposit with the Secretary of the Treasury of the United States to the credit of the account of this State in the Unemployment Trust Fund established and maintained pursuant to section 904 of the Social Security Act, 42 U. S. C. A., sec. 1104. Money is requisitioned from this fund from time to time by the State Commission as needed for the payment of benefits prescribed by the Act.

The Act has been approved and certified pursuant to section 903(a) of the Social Security Act, 42 U. S. C. A., sec. 1103(a), so that contributors to the State fund are entitled to credit their contributions in satisfaction of the tax imposed (on employers only) by the Social Security Act to the extent of 90% of the tax. Pursuant to the Social Security Act, the Federal Government pays to the State Commission approximately $700,000 per annum to pay administrative expenses of the Commission.

Section 15 of the Act, Kentucky Statutes Supp. 1939, section 4748g-15, provides for the establishment of Employer Reserve Accounts and a Pooled Account. All contributions of employers, except emergency contributions to the Pooled Account provided in subsection (f) of section 15, are credited to these reserve accounts, which may be used only for the payment of benefits to

employees of the respective employers in whose name the reserve accounts are established. Each employer has his own separate reserve account. To the extent that the reserve accounts are sufficient, benefits must be paid from them but if the reserve account of any employer is insufficient to pay benefits allowed to his employees, the deficiency is payable from the Pooled Account.

The Commission is required to maintain within the fund a Pooled Account, *mingled and undivided.* All worker contributions are credited to the Pooled Account and constitute by far the major portion of it, though certain other minor items provided by section 15 are credited to it. Under the original Act a portion of the worker's contributions was credited to the Employer's Reserve Accounts and the balance to the Pooled Account.

The Pooled Account, a portion of which gives rise to the present controversy, is commonly referred to as a "cushion account", since it is used as a cushion to absorb major shocks to the employer reserve accounts as above indicated, that is, to pay benefits when reserve accounts become depleted.

The Pooled Account at the present time amounts to about $9,000,000 and approximately $1,040,000 of this sum is represented by contributions of railroad workers who were in covered employment from January 1, 1937 to July 1, 1939. On this latter date, by virtue of the Railroad Unemployment Insurance Act, 45 U. S. C. A., sec. 363(a), railroads and their employees were removed from the operation of state unemployment compensation acts, and placed under the federal act and no railroad employee could thereafter assert any right to unemployment benefits under an unemployment compensation law of any state.

By subsections (b) and (c) of the same section it was provided in substance, that unless the State Commission, on or before April 13, 1940, authorized the Secretary of the Treasury to transfer from its account in the unemployment trust fund to the railroad unemployment insurance account in the unemployment trust fund (i. e. to the Federal Government) an amount equal to the balance of the railroad employer's reserve accounts (now approximately $3,500,000), plus the amount trans-

ferred to the Pooled Account from contributions of the railroad workers (approximately $1,040,000), the Federal Government would no longer pay to the State Commission the approximate $700,000 per annum heretofore contributed by it for administrative expenses.

Acting under the stimulus supplied by the quasi threat contained in the federal act, the 1940 General Assembly of Kentucky enacted House Bill No. 536, section 1 of which authorized the State Commission to effect the transfer of these funds in accordance with the federal act.

The State Commission, being doubtful of its right to consummate the transfer of the $1,040,000 credited to the Pooled Account from contributions of railroad workers, filed this action under the declaratory judgment act, seeking a declaration of rights. The defendants in the action were the appellees, three railroad employees who were made defendants individually and as representatives of all others similarly situated. These defendants answered, alleging that the act of the General Assembly of 1940, authorizing the transfer of this sum, was in violation of the constitution of the United States and this State and asserted the right of the railroad workers to have refunded to them their contributions under the Act which went to make up this sum.

The trial court adjudged that House Bill No. 536, enacted by the General Assembly, authorizing the transfer of the fund, was void as being in violation of section 180 of the Constitution of Kentucky and that the transfer should not be made. It was further adjudged that the Commission should refund to each railroad worker that portion of the Pooled Account represented by contributions made by him pursuant to the Act. This appeal calls in question the correctness of the trial court's judgment on these two questions and we will consider them in order.

In Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, in upholding the constitutionality of the Alabama Unemployment Compensation Act, the general plan and scope of which is similar to the Kentucky Act, it was said that the levy (contributions) was within state taxing power, whether it be called an excise or by another name, and that it was an exertion of the taxing power of the state.

We held in Barnes v. Indian Refining Company, 280 Ky. 811, 134 S. W. (2d) 620, that the Unemployment Compensation Law was a taxing statute. See also cases therein cited. We must assume, therefore, in approaching the questions confronting us that the contributions to the Pooled Account by the railroad workers are taxes validly levied.

Section 180 of the Constitution of Kentucky provides in part:

"Every act enacted by the general assembly, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

The language contained in this constitutional prohibition against diversion of tax funds to other purposes than that for which the tax was levied is so plain and unambiguous that this court has seldom been called on to construe it with reference to legislative action although we have frequently held that subordinate bodies such as city councils, boards of commissioners, boards of education and fiscal courts may not divert tax money levied for one purpose to a purpose different from that for which it was levied. See City of Newport v. McLane, 256 Ky. 803, 77 S. W. (2d) 27, 96 A. L. R. 655, and cases therein cited. We find however, that in Board of Education of Covington v. Board of Trustees of Public Library of Said City, 113 Ky. 234, 68 S. W. 10, it was held that a tax levied and collected by a city for school purposes could not be appropriated by an act of the Legislature to maintain a public library open to the pupils of the school as a part of the general public, the library not being under the control of the Board of Education or of the school. It may be observed that the purpose to which the Legislature attempted to divert the fund was a purpose closely akin to and allied with the general purpose for which the tax was levied, namely, education.

Section 14, subsection c of the Act, Ky. Stats. Supp. 1939, sec. 4748 g-14(c) provides that monies may be requisitioned from the State's account in the Unemployment Trust Fund *solely* for the payment of benefits.

Thus the Act, which is the levying statute, levies a tax for the specific purpose only of paying benefits to unemployed workers. The contributions of the railroad workers paid pursuant to the Act and credited thereunder to the Pooled Account are taxes validly levied, in accordance with the Constitution, section 180, that purpose being *solely* for the payment of Unemployment Compensation benefits under the Kentucky Act. The Legislature was consequently without power, by virtue of the Constitution, section 180, to devote the taxes raised by this levy to another purpose. Clearly, the Act of the Legislature authorizing the transfer of this fund to be administered under the Railroad Unemployment Insurance Act by the Federal Government is an attempt to devote this tax fund to another purpose than that for which it was levied. The tax was levied and paid into the Pooled Account for the purpose of paying benefits under the State law and from the moment it was paid in was subject, if the necessary contingency arose, to the payment of benefits to all covered employees, railroad workers, miners, carpenters, mechanics and others. Were the fund transferred, it would be administered not under the Act by State officials but under the Railroad Unemployment Insurance Act by federal officials and would be subject to the payment of benefits only to railroad workers. Indeed, it is doubtful that the fund, if transferred, would actually be subject to the payment of benefits to railroad workers since the railroad Unemployment Insurance Act does not require employees to make contributions to the fund created by that act for the payment of unemployment compensation benefits—only employers are taxed under that act. As a matter of fact, only eight states besides Kentucky have exacted contributions from employees and if this fund were transferred, to be administered under the Federal Act, 45 U. S. C. A., sec. 351 et seq., railroad workers in the nine states who have made contributions would receive no greater benefits under the Federal Act than railroad employees in those states which have not exacted contributions from employees. So that, if it be deemed material to this controversy, it is doubtful that the railroad workers of Kentucky would receive any benefits whatever from the transfer—certainly only a most remote benefit and one not in contemplation of the Kentucky Act.

We consider it no valid answer to this position to say that the transfer of the fund, if effected, would be for the same general purpose and effect as that for which it was levied, namely, the payment of unemployment compensation benefits. As pointed out above, the attempted transfer by the Legislature of a tax levied by a city for school purposes to a fund to maintain a public library was for an educational purpose, closely akin to and allied with the purpose for which the tax was raised, nevertheless it was held that such an attempted transfer was a violation of section 180 of the Constitution. We are unable to escape the conclusion that the Act of the Legislature, with which we are here dealing, which directed a transfer of the railroad workers contributions to the Railroad Unemployment Insurance Account in the Unemployment Trust Fund (that is, to the Federal Government), is plainly an attempt to devote the tax raised under the Act for a specific purpose to another purpose and is therefore in violation of section 180 of the Constitution and void.

We thus arrive at a consideration of the question as to what disposition should be made of that portion of the Pooled Account represented by the $1,040,000 in contributions from railroad workers. The Commission takes the position, in which it is supported by amicus curiae briefs filed on behalf of the Brotherhood of Locomotive Firemen and the Brotherhood of Trainmen, that this sum should remain in the Pooled Account while the appellees, as representatives of the remaining railroad workers, insist that it should be refunded to the railroad workers.

As a matter of first impression it appeared to us that the railroad workers were entitled to have their contributions returned to them but a more mature and careful consideration of the question convinces us that such is not the case.

The argument is made, which at first blush seems sound, that the fund accumulated from contributions of railroad workers is a trust fund for their benefit and that the purposes of the trust have failed and that the fund should therefore be returned to them. It is argued that even though the employees' contributions may technically be denominated taxes nevertheless the fund created thereby is different from the ordinary tax and

creates a trust fund in their behalf. And there is some support for this view that taxes of this character constitute a trust fund. Tatum v. Wheeless, 180 Miss. 800, 178 So. 95; State v. Robinson, 59 Idaho 485, 83 P. (2d) 983.

We would be more inclined to agree with this line of argument if the railroad workers were a separate and distinct class under the Act and had the rights of others not become attached to all funds in the Pooled Account. Even though we assume that a trust fund is created in the Pooled Account in behalf of the employees who have contributed thereto, in reaching a correct solution of the question we must necessarily take into consideration the true nature of this so-called trust fund and the rights of all persons coming within the scope of the Act. We are dealing with a type of legislation of comparatively recent origin made necessary by the complexity of modern social and economic conditions, the constitutionality of which is sustainable under the general welfare provision of the constitution of the United States but questions arising under it are nevertheless determinable by the application of existing legal principles, in the application of which we must look to the Act itself to ascertain the true nature and character of the Pooled Account and the various equities and rights attaching thereto.

By section 14(c) of the Act all money collected pursuant to the Act goes into a fund designated as the Unemployment Insurance Fund. By section 15, Ky. Stats. Supp. 1939, sec. 4748g-15, the Commission is required to maintain within this fund a Pooled Account, *mingled and undivided,* to which are credited the contributions of employees and, as above pointed out this fund is administered "separate and apart from all public moneys or funds of the State." Clearly, then, the Pooled Account is an insurance fund and one in which every covered employee is interested—interested to the extent that he has a right to draw benefits therefrom if his employer's reserve account is exhausted. This interest extends to the entire fund comprising the Pooled Account and the aggregate of covered employees have, by virtue of being subject to the Act, an interest in the fund to the extent that they are entitled to see that no money is withdrawn from the fund except for the

purpose specified in the Act, namely, the payment of benefits.

It cannot with any degree of reason be said that the so-called trust fund has failed as far as the railroad workers are concerned and that they have received no benefit therefrom. They did receive the benefit of protection from the Pooled Account for the period from January 1, 1939, to July 1, 1939, during which period every railroad worker was eligible to draw benefits therefrom. As a matter of fact it did not become necessary for them to do so owing to the stability of the employment in which they were engaged but, had some catastrophe resulted in the discontinuance of railroad operation in this state, the railroad workers might have drawn in benefits the entire reserve accounts of their employers, the entire amount of contributions paid into the Pooled Account by them and many thousands of dollars paid into it by employees other than railroad workers. As a matter of fact numerous unemployed railroad workers have drawn unemployment compensation benefits under the Act in amounts far greater than the contributions paid in by them. It would be singular, indeed, if refunds were made to these employees. This situation illustrates that the railroad workers did receive benefits under the Act and that there was no complete failure of the so-called trust as to them. And, in the application of legal principles in the endeavor to obtain a correct solution of the question confronting us, we should apply them not alone in the light of conditions and circumstances existing at the present time but in the light of conditions and circumstances which might reasonably now exist.

The railroad workers therefore have had the benefit of protection (or insurance) by the Pooled Account and have only ceased to be entitled to benefits under the Act and to the protection of the Pooled Account by operation of the paramount authority of the Federal Government which withdrew them from the operation of the Act and from the protection of the Pooled Account—they were not removed from the protection of the fund in controversy by operation of the Act itself or by any act of the Commission or of the State of Kentucky.

The contributions paid in by the railroad workers are taxes validly levied (even though levied for a spe-

cific purpose, which, it is argued, amounts to a trust) and we know of no authority for a return of a tax validly levied. If a trust was created, there has been no complete failure thereof since the railroad workers received a benefit therefrom, the benefit of protection until withdrawn from operation of the Act, and such trust is still operative for the benefit of employees for whom it was created, and being operative, its terms cannot be violated by unauthorized withdrawals from the fund. We cannot escape the conclusion that the rights of all covered employees would be violated by a return of contributions to the railroad workers and that consequently the contributions of these workers must remain in the Pooled Account.

The conclusion enunciated has been reached without consideration of the rights of employers, which have been put forward in an amicus curiae brief filed by Associated Industries, an association of subject employers. By section 15, subsection (f) of the Act the amount of contributions, or taxes, paid in by employers is dependent to some extent on the amount of the Pooled Account—if the amount of the account falls below three times the highest total amount of benefits paid from the account during any one of the three preceding years, the Commission has power to declare an emergency period during which contributions of the employers are diverted to a certain extent from their reserve accounts to the Pooled Account. This is probably an additional reason supporting the conclusion reached that no portion of the Pooled Account may be returned to the railroad workers but as the reasons assigned are deemed sufficient we will not enter into an extended discussion of the rights or interests of employers in the Pooled Account.

We are urged by the Commission, in order to furnish a complete declaration of rights, to determine whether or not section 2 of House Bill No. 536 is valid. That section provides in substance that notwithstanding section 14(c) of the Act (which has heretofore been referred to as prohibiting the use of any taxes levied under the Act for any purpose except for the payment of benefits) the Commission, in the event it is prevented from transferring the railroad workers' contributions to the Railroad Unemployment Insurance Account, pursuant to section 1 of the House Bill, may pay adminis-

trative expenses under the Act from the Pooled Account to an amount equal to the railroad workers' contributions.

Counsel for Associated Industries, in the amicus curiae brief, insist that this section of the bill is valid and that to hold otherwise might result in an undue hardship being imposed on employers in that the amount of tax imposed on them under the Act might be increased if the Commission may not use this portion of the Pooled Account for administrative purposes. It may be true that employers' taxes may be increased if section 2 of the house bill is held invalid but we must apply correct legal principles regardless of a supposed hardship and those on whom it might be imposed.

As heretofore pointed out the taxes levied under the Act were levied for the specific and *sole* purpose of paying benefits. Since we have held that section 1 of House Bill No. 536, directing a transfer of the railroad workers contributions to the Federal Government, is in violation of section 180 of the Constitution, it necessarily follows that section 2 of the bill which attempts to devote the tax, raised under the Act for the specific purpose of paying benefits, to another and different purpose, that of paying administrative expenses, is also in violation of that constitutional provision and therefore void.

In opposition to this conclusion it is suggested that there is an implied authority on the part of the Commission to use a portion of the fund for administrative expenses as, otherwise, the operation of the Act would be stalemated because the Commission, as the result of not being able to transfer the railroad workers' contributions to the Federal Government, will not receive any funds under the Social Security Act for the payment of administrative expenses. There is no basis for the implication of such authority, however since the Act plainly contemplates that administrative expenses will be paid with money received from the Federal Government and by section 20 of the Act, Ky. Stats. Supp. 1939, sec. 4748g-20, provision is made for the contingency of non-receipt of the necessary money from the Federal Government for that purpose. That section provides that in such a contingency employers shall be subject to an additional levy of three-tenths of one per-

cent of the amount of their payrolls, which additional levy is to defray administrative expenses. This may, as argued, be a hardship on employers since they pay to the Federal Government a tax of three-tenths of one percent on the amount of their payrolls and the money raised by this tax is used, at least in part, by the Federal Government to put the Commission in funds for administrative expenses. If they are assessed an additional three-tenths of one percent for administrative purposes under the Act the employers are, they claim, being assessed this tax by both governments for practically the same purpose. There is a real basis for complaint here but we can only take the law as we find it and declare it accordingly and, without a doubt, a payment of administrative expenses from the Pooled Account would be a violation of the constitutional provision against diversion of tax funds.

The root of the whole trouble is, it seems to us, in the Federal Act which, when carefully analyzed, appears to be a circuitous method of attempting to compel the making of a gift of the railroad workers' contributions to the Federal Government, instead of permitting this money to remain to the credit of the Commission for the payment of benefits to all covered employees. If the fund in controversy were obtained by the Federal Government directly by a transfer thereof under section 1 of House Bill No. 536, or indirectly, by the circuitous provisions of the Federal Act as a result of using it to pay administrative expenses, if this were permitted, in its essence the transaction would be a gift since the Kentucky railroad workers, who paid it in, receive no more benefit or advantage under the Railroad Unemployment Insurance Act than do such workers in other states who made no contributions under the state laws.

The conclusions we have reached are 1) the fund in controversy may not be transferred to the Federal Government, 2) the fund must remain in the Pooled Account and 3) no part of the fund in the Pooled Account may be used for administrative expenses.

The judgment is affirmed in part and reversed in part with directions to enter a judgment in accordance with this opinion.

The whole court sitting except Judge Rees.