# Kentucky Color & Chemical Co. et al. v. Barnes, Executive Director of Kentucky Unemployment Compensation Commission, et al.

May 19, 1942.

Robert Hatton and Richard P. Dietzman for appellants.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The question presented for our determination is the constitutionality of an act passed at the Regular, 1942, Session of the General Assembly of Kentucky, known as House Bill 129, which reads:

"An Act relating to the transfer out of interest

in the Unemployment Trust Fund, and declaring an emergency.

"Be it enacted by the General Assembly of the Commonwealth of Ky.

"The Kentucky Unemployment Compensation Commission shall, notwithstanding any other provisions of law, authorize and direct the Secretary of the Treasury of the United States to transfer to the railroad unemployment insurance account out of interest hereafter credited to the State's account in the unemployment trust fund pursuant to Sec. 904 of the Social Security Act, an amount equal to (a) such proportion of the balance in the pooled account as of June 30, 1939, as the amount of contributions paid by employees and employers subject to the Railroad Unemployment Insurance Act and credited to such pooled account bears to the total of all contributions theretofore collected under the Kentucky Unemployment Compensation Law and credited to such pooled account plus (b) contributions paid by employees and employers subject to the Railroad Unemployment Insurance Act and credited to the pooled account after June 30, 1939, and prior to January 1, 1940, plus (c) additional amount equal to two and one half per centum per annum on the untransferred balances on the foregoing amounts directed to be transferred, computed from the date the Social Security Board determined this State's 'preliminary amount' and 'liquidating amount' pursuant to Section 13(e) of the Railroad Unemployment Insurance Act until the transfer herein authorized and directed to be made is effectuated. This transfer is to be authorized and directed on or before the thirtieth day after the close of the 1942 regular session of the General Assembly.

"Declaration of Emergency

"Whereas, the foregoing provisions of this Act are necessary to transfer such interest on or before July 1, 1942, and

"Whereas, the attainment of such purpose demands immediate action by this body, an emergency is hereby declared to exist, and this Act shall become effective upon its passage and approval by the Governor."

This act was passed after chapter 194 of the Acts of 1940 was declared to be in violation of Section 180 of the Constitution of Kentucky in Unemployment Compensation Commission v. Savage, 283 Ky. 301, 140 S. W. (2d) 1073, and represented the desire of the General Assembly to meet the demands of the federal government that the contributions of the railroad employees to the pooled account be turned over to it. The 1940 Act authorized the Kentucky Unemployment Compensation Commission to effect the transfer of $1,040,000 from the Unemployment Insurance Fund on deposit with the Secretary of the Treasury of the United States to the credit of the account of this state in the Unemployment Trust Fund established and maintained pursuant to Section 904 of the Federal Social Security Act, 42 U. S. C. A., Section 1104. The sum of $1,040,000 was the amount of contributions from railroad employees to the pooled account during the period prior to July 1, 1939, when they were covered by the Kentucky Unemployment Compensation Act, Laws 1938, c. 50, Section 1 et seq. The Federal Railroad Unemployment Insurance Act, 45 U. S. C. A., Section 351 et seq., applicable to all employees of railroads, made exclusive provision for the payment of unemployment benefits for unemployment accruing after June 30, 1939, and thereafter railroad employees in Kentucky were not covered by the Kentucky Act. In the Savage case it was held that the contributions of the railroad workers, paid pursuant to the Kentucky Unemployment Compensation Act and credited thereunder to the pooled account, were taxes validly levied for the sole purpose of paying unemployment compensation benefits under the act, and that the 1940 Act, which directed a transfer of these contributions to the federal government, was an attempt to devote the tax fund to a purpose other than that for which it was levied and was therefore in violation of Section 180 of our Constitution, and void. The act now under consideration, House Bill 129, undertakes to transfer to the federal government the interest which, after the effective date of the act, may be credited to the fund on deposit with the United States Treasurer until the amount so transferred equals the amount which the federal government insists should be transferred as the railroad workers' contributions to the pooled account. The narrow question presented for decision is this: Is the interest earned on the funds deposited by Kentucky with the Secretary of the Treasury and credited to the

Kentucky account in the Unemployment Trust Fund taxes within the meaning of Section 180 of our Constitution which provides that no tax levied and collected for one purpose shall ever be devoted to another purpose? In the Savage case it was held that the moneys in the pooled account were a tax fund which could not be diverted to a different purpose under Section 180 of the Constitution. The 1938 Kentucky Unemployment Compensation Act provided that in addition to all contributions paid by workers under the act and other funds there should be credited to the pooled account all realized earnings, and gains on investments of the fund, and all fines, penalties and interest on delinquent contributions collected under the act. Acts 1938, Chaper 50, Section 15. The pooled account is part of the Unemployment Insurance Fund established by Section 14 of the Act. The Unemployment Insurance Fund consists of all contributions and moneys collected under the act, all fines and penalties collected pursuant to the provisions of the act; interest earned upon any moneys in the fund; any property or securities acquired through the use of moneys belonging to the fund; and all earnings of such property or securities. Section 14 of the 1938 Act further provides that all moneys remaining after passing through a clearing account "shall be immediately deposited with the Secretary of the Treasury of the United States of America to the credit of the account of this State in the Unemployment Trust Fund, established and maintained pursuant to Section 904 of the Social Security Act, as amended." Section 904 of the Federal Social Security Act makes it the duty of the Secretary of the Treasury to invest such portion of the Unemployment Trust Fund as is not in his judgment required to meet current withdrawals in interest bearing obligations of the United States or in obligations guaranteed as to both principal and interest by the United States. The interest on any obligation held in the fund shall be credited to and form a part of the fund. Section 903 of the Federal Social Security Act provides that the Social Security Board shall approve a state law submitted to it if it contains, among others, the following provisions:

"(3) All money received in the unemployment fund shall immediately upon such receipt be paid over to the Secretary of the Treasury to the credit of the Unemployment Trust Fund established by Section 904 [1104 of this chapter];

"(4)    All money withdrawn from the Unemployment Trust Fund by the State agency shall be used solely in the payment of compensation, exclusive of expenses of administration;    *    *    *

"(6)    All the rights, privileges, or immunities conferred by such law or by acts done pursuant thereto shall exist subject to the power of the legislature to amend or repeal such law at any time."

The enactment of the Federal Social Security Act made it possible and desirable for the states to enact Unemployment Compensation Acts, a form of legislation theretofore impractical due to the necessity of simultaneous and uniform action by all the states to prevent inequalities in interstate competition.    The Federal Act allows employers a maximum credit of 90 per cent. of the federal tax if their state passes an Unemployment Compensation Act in conformity with certain conditions, including those heretofore referred to, set forth in the Federal Act.    The tax imposed by the Federal Act is an attempt to induce the enactment of state legislation by means of a federal credit device and has been successful as every state in the Union has passed an unemployment compensation act since the enactment of the Federal Act. As pointed out by the Supreme Court in Steward Machine Company v. Davis, 301 U. S. 548, 57 S. Ct. 883, 891, 81 L. Ed. 1279, 109 A. L. R. 1293, the Social Security Act was an attempt to find a method by which the states and the federal government could "work together to a common end."    As said by the court in that case, many states had "held back through alarm lest in laying such a toll upon their industries, they would place themselves in a position of economic disadvantage as compared with neighbors or competitors."    The administration of the system of unemployment compensation is left to the states, but the federal government controls the legislative policy to be followed since state unemployment compensation acts must contain certain provisions set forth in the Social Security Act and must be approved by the Federal Social Security Board.    One of the features of this policy is that all taxes levied and collected under the state unemployment compensation acts and paid into the Unemployment Trust Fund are raised for the specific purpose of paying unemployment benefits.    The Kentucky Act, in conformity with the Federal Act, meticulously provides that all interest and earnings on the

Kentucky fund shall be a part of the fund. In the Savage case it was held that the contributions made to the fund prior to July 1, 1939, by railroad employees, amounting to $1,040,000, were taxes validly levied and could not be withdrawn except for the purpose of paying benefits, the sole purpose for which they were levied. In answer to the argument that the fund accumulated from contributions of railroad employees was a trust fund for their benefit and that the purposes of the trust had failed and that the fund should therefore be returned to the railroad workers, it was said that even if a trust was created, as argued, there had been no complete failure thereof since the railroad workers had received the benefit threfrom and the trust was still operative for the benefit of all employees covered by the act, and, consequently, must remain in the pooled account.

It is appellants' contention that the interest on Kentucky's share of the Unemployment Trust Fund on deposit with the Secretary of the Treasury of the United States is not tax receipts and that therefore House Bill 129 does not contravene Section 180 of the Constitution. It is conceded on both sides that there is a dearth of authority and that there is no Kentucky case directly in point, but appellants rely on that line of cases which deals with the distribution of interest and penalties paid by the taxpayer along with the tax. The cases cited are Estus v. State, 83 Okl. 181, 200 P. 1002; City of Bisbee v. Cochise County, 44 Ariz. 233, 36 P. (2d) 559; Maricopa County Municipal Water District v. Oglesby, 52 Ariz. 511, 91 P. (2d) 257; Kansas City v. Stewart, 90 Kan. 846, 136 P. 241. In these cases it was held, in substance, that money derived from interest and penalties imposed on account of a taxpayer's delinquency was not a part of the tax, but was in the nature of an additional charge imposed by the Legislature to hasten payment and could be devoted to any purpose designated by the Legislature, and the fact that it was devoted to a purpose other than that for which the tax was levied did not constitute a violation of a constitutional provision requiring taxes to be applied only for the purpose for which they were levied. All the cases cited recognize the general rule that such interest and penalties go with the tax unless the Legislature makes a different disposition of them. In City of Bisbee v. Cochise County [44 Ariz. 233, 36 P. (2d) 563], the Supreme Court of Arizona said:

"It is the rule of law that, in the absence of an express statute to the contrary, interest, penalties, and costs collected on delinquent taxes follows the tax, but the Legislature may change this rule and provide otherwise."

Appellants also rely on Scott County v. Johnson, 209 Iowa 213, 222 N. W. 378, Boyd v. Johnson, 212 Iowa 1201, 238 N. W. 61, and Collins v. Humphrey, 181 Ark. 609, 27 S. W. (2d) 102, 106. In Scott County v. Johnson and Boyd v. Johnson, the Legislature amended an act which provided that interest on bank deposits of a governmental subdivision should go into the general fund of the subdivision. The act as amended provided that the interest on such deposits should thereafter be credited to the state's sinking fund. In holding the act valid the court pointed out that the legislation under consideration only applied to interest accruing after the act became effective. In Collins v. Humphrey, the validity of an Arkansas act changing the allocation of taxes collected under the Income Tax Act of 1929 and under an Act of 1923, known as the Severance Tax Law, was involved. The act was assailed on the ground that it violated the provision of the Arkansas Constitution that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." The court upheld the act on the ground that the phrase "arising from a tax levied for one purpose" meant that the limitation on the Legislature's power to divert a fund applied only to taxes collected and not to taxes levied but not collected. It recognized the rule that the Legislature has no power to divert a fund after the tax has been levied and collected. None of the cases relied upon by appellants is a solvent of the problem confronting us.

In the Savage case [283 Ky. 301, 140 S. W. (2d) 1077] it was held that the pooled account which is maintained within the Unemployment Trust Fund is an insurance fund in which every covered employee is interested. In the opinion it was said:

"This interest extends to the entire fund comprising the Pooled Account and the aggregate of covered employees have, by virtue of being subject to the Act, an interest in the fund to the extent that they are entitled to see that no money is withdrawn from the fund except for the purpose specified in the Act, namely, the payment of benefits."

Both the Social Security Act and the Kentucky Unemployment Compensation Act provide that the interest on the Unemployment Trust Fund shall constitute a part of the fund. If the covered employees have a vested interest in the fund, they also have a vested interest in the right to have all interest earned on the fund added thereto. Undoubtedly this is true as to interest earned on the fund in existence at the time House Bill 129 becomes effective. Whether the General Assembly could provide that interest on taxes thereafter collected should be used for some purpose other than the payment of benefits under the Unemployment Compensation Act need not be determined, since the act under consideration provides for the diversion of interest on tax funds heretofore collected. These taxes were paid under a statute which stipulated that they should be immediately deposited with the Secretary of the Treasury to the account of this state in the Unemployment Trust Fund; that all interest received from investments of the fund should constitute a part thereof; and that moneys should be relinquished from the state's account in that fund solely for the payment of benefits. The taxes were paid into the fund under a solemn commitment by both the federal and state governments that the principal and accretions thereto by way of interest earned should be inviolate for the purpose specified in the Unemployment Compensation Act. A sound distinction between a vested right in the taxes paid into the fund and in the right to have the earnings of the fund added thereto cannot be made, and, consequently, the opinion in Unemployment Compensation Commission v. Savage is controlling in the case before us.

It is suggested that Section 20 of the Kentucky Unemployment Compensation Act, Kentucky Statutes, Section 4748g-20 authorizes the enactment of an amendment such as House Bill 129. In Section 20 of the Act, the General Assembly reserved the right to amend, re-enact or repeal all or any part of the act at any time, and provided that there should be no vested right of any kind against such amendment, re-enactment or repeal. This section was enacted to meet the requirement of the Federal Social Security Act that any state law approved by the Social Security Board must provide that "all the rights, privileges, or immunities conferred by such law or by acts done pursuant thereto shall exist subject to the power of the legislature to amend or repeal such law at

any time.'' 42 U. S. C. A., Section 1103. Congress inserted this provision in the Federal Act, no doubt, in anticipation of an assault on its constitutionality and on the validity of state unemployment compensation laws because of the coercive effect of the Federal Act. Such an assault was made, but the arguments in support of the contention that the Social Security Act was coercive in its operation were held untenable by the Supreme Court of the United States. Steward Machine Company v. Davis, supra; Carmichael v. Southern Coal and Coke Company, 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327. Section 20 of the Kentucky Unemployment Compensation Act does not enlarge the inherent power of the Legislature to amend or repeal its acts, but merely declares that the Legislature reserves the right to abandon or change the policy embodied in the act, a right it possessed without the reservation. It is specific notice to interested persons that the law may be discontinued or changed at any time. The decision in the Savage case is a complete answer to the argument that this section authorized the enactment of House Bill 129.

We are not unmindful of the increased burden that will be cast upon the employers in this state by a decision holding the 1942 Act unconstitutional, a burden for which they are in no way responsible. They are innocent bystanders who will suffer if the federal government withholds funds from this state for its assistance in the administration of the Unemployment Compensation Act. As long as such assistance is withheld, employers in this state will be compelled to pay an additional pay roll tax of .3 of 1% by virtue of the provision for such a contingency in Section 4748g-20, Kentucky Statutes, and thus the very situation which the Federal Social Security Act was intended to obviate will be created; that is, Kentucky employers will be placed in an unfavorable competitive position as compared with employers in other states. However, such a result can have no bearing on the question presented to us for decision. As said in the Savage case: ''We can only take the law as we find it and declare it accordingly.''

We conclude that House Bill 129 contravenes Section 180 of the Constitution, and, such being the judgment of the lower court, the judgment is affirmed.

Whole court sitting.