## Shaw v. Kentucky Unemployment Compensation Commission.

June 13, 1944.

816

C. B. Latimer for appellant.

Elwood Rosenbaum and H. Kelly Clore for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant, plaintiff below, was during 1939 and 1940 operating two motor companies in different cities, which constituted an employing unit according to the terms of the Federal and our Unemployment Compensation Acts. He became delinquent in the payment of tax or contributions for parts of those years, and the Kentucky authorities obtained judgment in the above court for $738.82 which included interest and penalties. Plaintiff failed to disclose in this instant petition when suit was filed or judgment rendered. However, he states that execution was issued and levied on sufficient property to satisfy the judgment; he does not state when the execution was issued or levied. His petition, naming the Kentucky Commission above as defendant, recites that since the judgment was obtained and on June 29, 1943, he paid the defendant $233.75. This is evidenced by a receipt of the Commission's contribution supervisor

of date above mentioned. Further, that since the judgment was rendered he paid to the Federal Government $504.77, as evidenced by receipt of a deputy Internal Revenue Collector of date March 31, 1943. This was filed with the circuit court clerk of Franklin County "to be attached to the petition," on July 13, 1943.

Appellant sought to enjoin the Kentucky authorities from taking further steps toward enforcing its judgment, and to have the court require the commission to credit its judgment by the sum paid to the Internal Revenue Collector. He bases his right to the relief sought on his assertion "that the amount paid to the Federal Government was for the same tax and for the same purpose as that claimed by the defendant, and at the time of making the payment to the Federal Government Collector he was told that the State would credit the claim in said amount." Obviously the fact that he was so told by the Federal officer would afford him no grounds of relief, since any assurance by him would not be binding on the Kentucky Commission. He is, therefore, relegated to his plea that the $504.77 was for the same tax and for the same purpose as that claimed by the defendant. This is no more than an erroneous conclusion of law. The tax collected by the Federal authorities was not the same tax for the same purpose, and the proceeds cannot reach by operation of law the trust fund set up by the Federal Act for the benefit of the unemployed, and naturally cannot reach the proper funds for the purpose set up in our laws; nor can it be requisitioned from the Government, unless the provisions of the two acts be duly complied with.

While it does not appear from appellant's pleading that there was any process issued against him for the payment of the sum to the Revenue Collector, there must have been; it is so stated in appellee's brief, without contradiction. If the payment to the Government was voluntary then appellant could not, under the circumstances, require the State authorities to give him credit on the judgment.

It is unnecessary for us to go into details of the history of the National or State legislation which led to the enactment of the social security or unemployment laws, or to the modus operandi whereby insurance is granted to unemployed laborers. A reference to Unemployment Compensation Comm. Board v. Savage, 283

Ky. 301; 140 S. W. 2d 1073; Kentucky Color & Chemical Co. v. Barnes, 290 Ky. 681, 162 S. W. 2d 531, and Steward Machine Co. v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293, will furnish details, though the precise question presented here was not involved.

The difficulty with appellant's position is due to a failure to construe correctly the intricate laws under which the taxes are levied, paid and administered, and the nature of the tax. Both laws are of recent enactment and have their beginning in what is known as the Social Security Act, 42 U. S. C. A. sec. 301 et seq., and as said in the Machine Company case, supra, this act is separated into eleven distinct titles. The one which is to be considered here is principally No. 9, 42 U. S. C. A. sec. 1101 et seq., which relates to employers of eight or more persons, each employer to pay a fixed tax for each calendar year by the year, or in quarterly installments. The tax assessed is nothing more nor less than an excise tax and only comes under the denomination of an unemployment insurance tax by virtue of the action of various states and compliance by the employer with the laws.

Under our Act, KRS 341.010 et seq. which is the State Act conforming to the provisions of the Federal Act, all payments thereunder are placed in the trust fund and as such are transmitted to the Treasurer of the United States, whereupon such fact is certified to the Internal Revenue Collector. Upon such certification, the 3 per cent tax imposed by the Federal Government is credited with the amount collected and placed in the trust fund by the state authorities, and the Collector of Revenue for the United States collects the balance or .3 per cent only (unless otherwise exempt). The amount collected under the State Act (2.7 per cent) remains in the trust fund to the credit of the State of Kentucky for the benefit of unemployed workers covered by its Act, whilst the .3 per cent collected by the Government goes into the Treasury of the United States to be mingled with other funds derived from taxation and out of which (the United States Treasury) are paid all the costs of administration of all administrative agencies operating under acts conforming to the Federal Statute. Unless the state authorities actually collect the 2.7 per cent on the wages of covered employees, no credit is permitted on the 3 per cent tax imposed by the Federal

Act, in which event no part of the 3 per cent tax imposed by the Federal Act may be covered into the trust fund set up by the State Act. In other words, the State Act imposes a tax upon employee's wages covered by the Act in the amount of 2.7 per cent; the Federal Act imposes a tax thereon in the amount of 3 per cent; any amount paid to the state authorities not exceeding 2.7 per cent operates as a credit upon the amount of tax imposed by the Federal Act, but unless paid to the state authorities and so certified by them to the Federal Government, there is no credit allowed upon the tax imposed by the Federal Government.

Under the provisions of the master statute, which assesses this excise tax and applies proceeds in furtherance of purposes of the Social Security Act, or otherwise, depends first upon whether the individual State has enacted a law to bring itself within its provisions or not.

The taxing act provides for an annual or quarterly payment; if the tax be not paid within the times fixed by the Act, it must be paid the Collector upon notice and demand. The taxpayer upon his failure to pay within the time becomes a delinquent, subject to penalties and interest. He then occupies the same position with relation to the Federal tax as he would if the State had not taken advantage of the Act of Congress. He is compelled to pay the tax which, as we have shown, goes into the Federal Treasury but not into the trust fund set up by the State, and he does not get the credit he would have received had he paid the State-imposed tax.

That this position is correct is fortified by reference to the Federal Revenue Act of 1943, which in some parts amended Section 1601, 26 U. S. C. A. Internal Revenue Code, and which also to our mind affords opportunity for appellant to obtain relief, but not by the course he has up to this time pursued. It is provided that the credit against the tax for any taxable year shall be permitted only for contributions paid on or before the last day on which the taxpayer is required to file his return for such year in compliance with Section 1604, unless time be extended.

It is further provided that credit for contributions paid after such day shall not exceed 90 per centum of the amount which would have been allowable as a credit on account of such contributions, had they been made

820

before such day. Subsection (d) of the section first named provides for a refund or credit of the tax (81 per cent) to be made in accordance with revenue laws applicable in cases of erroneous or illegal payment or collection of revenue. Apparently these provisions of the Act are intended to be retroactive.

However, appellant would hardly be in position to take advantage of the credit or refund provisions mentioned, unless and until he had satisfied the judgment standing against him in our State court, or by co-operation with the State authorities, obtain the credit. We have been unable to find under the regulatory laws of the Government or the State anything to authorize us to hold appellant entitled to the relief sought in his pleading.

Judgment affirmed.