THE PEOPLE *ex rel.* E. ALLEN BERNARDI, Director of Labor, Plaintiff-Appellee, *v.* BETHUNE PLAZA, INCORPORATED, Defendant-Appellant.

First District (2nd Division)   No. 83—1984

Opinion filed May 29, 1984.

Edward A. Williams and David H. Coar, both of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Leslie J. Rosen, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals from an adverse judgment in a State action under the Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 300 *et seq.*) (Act) to collect delinquent unemployment insurance taxes assessed against defendant.

This appeal presents as issues whether: (1) the Act is unconstitutional as applied; and (2) the circuit court should have enjoined collection of the tax.

On November 6, 1979, the Director of the Illinois Department of Labor (Director) notified defendant that a determination and assessment under the Act had been rendered against it for unpaid contributions and interest for the first quarter of 1975 through the third quarter of 1978, totalling $41,372.76. This notice advised defendant that unless it filed a protest and petitioned for a hearing within 20 days, the determination and assessment would become final. A second such notice was served on defendant on August 28, 1980, advising it of its liability for $17,104.06 in contributions and interest, for the fourth quarter of 1978, the second quarter of 1979, and the first quarter of 1980. Both notices were accompanied by blank forms for defendant's use in pursuing its administrative remedies. Defendant neither protested nor petitioned for an administrative hearing with respect to either determination and assessment.

For the period from January 1, 1975, through March 31, 1980, defendant paid the Federal Internal Revenue Service $78,956.37 for excise taxes owing under the Federal Unemployment Tax Act (I.R.C. secs. 3301 *et seq.* (1976)) (FUTA). In its brief, defendant alleges that these taxes were forcibly collected after Federal authorities levied on defendant's assets to satisfy tax delinquencies.

On February 25, 1982, the State brought the instant action, pur-

suant to section 2206 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 686), to collect the unpaid taxes. Defendant's answer and affirmative defense were stricken on motion and the circuit court entered judgment on June 16, 1983, *nunc pro tunc* as of May 10, 1983, in favor of the State in the amount of $83,923.49. After its motion for reconsideration was denied, defendant brought this appeal.

## I

■ Defendant initially urges that the collection of the Illinois taxes in the instant situation constitutes punitive double taxation, depriving it of property without due process in violation of the fourteenth amendment to the United States Constitution. Defendant's failure to exhaust its administrative remedies, as here, is ordinarily deemed a waiver of its right to judicially question the unconstitutional application of a statute. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552, 359 N.E.2d 113; *Village of South Elgin v. Waste Management of Illinois, Inc.* (1978), 62 Ill. App. 3d 815, 822, 379 N.E.2d 349.) This waiver issue is not raised by the State. The waiver rule is a restriction on the parties, not the court, and in the interests of a just result the merits of defendant's challenge will be considered. *Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831; *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 1149, 428 N.E.2d 937.

■ Double taxation exists where both taxes are imposed for the same period of time, for the same purpose, upon the same taxpayer, and by the same taxing authority. (*People ex rel. Toman v. Advance Heating Co.* (1941), 376 Ill. 158, 163, 33 N.E.2d 206; *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, 83-84, 277 N.E.2d 319, *appeal dismissed* (1972), 406 U.S. 965, 32 L. Ed. 2d 663, 92 S. Ct. 2412. See also 84 C.J.S. *Taxation* sec. 39 (1954); 71 Am. Jur. 2d *State and Local Taxation* sec. 31 (1973).) Although not constitutionally forbidden, double taxation is never presumed and is valid only where the legislature has unequivocally intended to impose such taxation. (*Maass v. Higgins* (1941), 312 U.S. 443, 449, 85 L. Ed. 940, 945, 61 S. Ct. 631, 634; *People ex rel. Lindheimer v. Schweitzer* (1938), 369 Ill. 355, 360-61, 16 N.E.2d 897; *New York Central R.R. Co. v. Stevenson* (1917), 277 Ill. 474, 481, 115 N.E. 633.) The taxes at issue here were imposed by separate governmental entities, which of itself would ordinarily put them outside the sphere of double taxation; however, defendant maintains their collection is for the same purpose and will benefit the same governmental entity, the State. We disagree.

Employers are required to pay simultaneously taxes based on gross wages under both FUTA and the Act. FUTA, however, provides

for a 90% credit against monies collected under approved State laws, including the Act. (I.R.C. sec. 3302 (1976).) This credit device, interpreted as "*obviously an invitation to the states to enter the field of unemployment insurance*" (*Standard Dredging Corp. v. Murphy* (1943), 319 U.S. 306, 310, 87 L. Ed. 1416, 1420, 63 S. Ct. 1067, 1069), is allowed only for State taxes *actually paid*; it is disallowed for taxes levied but uncollected (*Quality Coal Co. v. United States* (D.C. Ark. 1946), 66 F. Supp. 105, 108). Defendant contends that payment of its full FUTA liability, without application of the credit, will result in the State's ultimately receiving from defendant almost twice what it should, claiming that FUTA taxes it paid will eventually be returned to the State. Defendant suggests that a reciprocal credit should be applied against its State tax liability for the "excess" FUTA taxes it paid.

■ The concerns and goals of both Federal and State legislation in this area are identical: relief of the social problems occasioned by involuntary unemployment. (*Charles C. Steward Machine Co. v. Davis* (1937), 301 U.S. 548, 586-89, 81 L. Ed. 1279, 1290-92, 57 S. Ct. 883, 890-92; Ill. Rev. Stat. 1983, ch. 48, par. 300; *Lindley v. Murphy* (1944), 387 Ill. 506, 511, 56 N.E.2d 832.) In effectuating this common objective, State and Federal laws are closely interrelated and mutually interdependent. (See *Rivard v. Bijou Furniture Co.* (1941), 67 R.I. 251, 258-59, 21 A.2d 563, 567.) Nevertheless, impermissible double taxation is absent here because significant differences exist in how those goals are accomplished by State and Federal taxes.

Taxes collected by Illinois from employers under the Act are deposited by Illinois with the Secretary of Treasury of the United States, who accordingly credits the book account separately maintained for Illinois in the Unemployment Trust Fund (Fund). (42 U.S.C. sec. 1104 (1976); Ill. Rev. Stat. 1983, ch. 48, par. 660A.) Monies thus credited are then available for the State's payment of unemployment benefits to eligible individuals and State administrative expenses. (42 U.S.C. sec. 1103(c)(1) (1976); Ill. Rev. Stat. 1983, ch. 48, par. 660B.) In contrast, excise taxes collected directly from employers under FUTA (I.R.C. sec. 3301 *et seq.* (1976)) are credited to the Fund's employment security administration account. (42 U.S.C. sec. 1101(b)(1) (1976).) Only a portion of this account is available to a State to help defray some of its expenses in administering its unemployment compensation law (42 U.S.C. sec. 1101(c)(1)(A) (1976)). The account is also used to cover Federal Department of Labor and Treasury Department expenses (42 U.S.C. secs. 1101(c)(1)(B), 1101(c)(2) (1976)). Significant also is that the amounts available to individual States under FUTA for

payment of administrative expenses are not determined by the taxes actually collected from those States, but are instead determined by the Secretary of Treasury on the basis of State population, the number of persons covered by the particular State law, the estimated costs of administration and other factors deemed relevant to the Secretary. 42 U.S.C. sec. 502(a) (1976).

Unless defendant pays its State tax there will be no funds thereby credited to Illinois' Federal Treasury account from which to pay unemployment benefits, the principal objective of these laws. This fact alone compels us to reject defendant's contentions. Further, Federal law provides no mechanism whereby "excess" FUTA taxes can be credited to a State's individual account. This "flaw," if any, inheres in the Federal scheme, not in the Act, and is beyond the purview of this appeal.

A similar conclusion was reached by the Court of Appeals of Kentucky in *Shaw v. Kentucky Unemployment Compensation Com.* (1944), 297 Ky. 815, 181 S.W.2d 697, the only reported case considering the issue presented here. There the State unemployment authority had obtained a judgment against the employer for delinquent State unemployment taxes; the employer nevertheless paid the Federal government an amount in excess of what otherwise would have been due had the 90% credit been applied. Denying the employer's attempt to enjoin collection of the State tax, the court there emphasized the differentiation in uses made of the State and Federally collected monies and accordingly rejected the employer's contention that the State and Federal taxes were the "same tax for the same purpose." (297 Ky. 815, 817, 181 S.W.2d 697, 698.) The employer was seen to "occup[y] the same position with relation to the Federal tax as he would if the State had not taken advantage of the Act of Congress." 297 Ky. 815, 819, 181 S.W.2d 697, 699.

Defendant points to certain provisions of the Act which it claims indicate a legislative intent not to impose a double tax. Section 2700D of the Act empowers the Director to enter into reciprocal arrangements with other governmental entities so that contributions paid by an employer to such other entities can be used to meet the employer's liability under the Act, provided such arrangement permits the crediting of this State's account in the Fund. (Ill. Rev. Stat. 1983, ch. 48, par. 760D.) These arrangements with the Federal government are inapplicable here, since the Director cannot require the Federal government to credit the State's account in the Fund in contravention of Federal law governing the disposition of funds collected pursuant to FUTA. (See 42 U.S.C. sec. 1101 (1976).) Although section 2700E of

the Act permits the Director to seek recovery of taxes erroneously paid to another taxing authority (Ill. Rev. Stat. 1983, ch. 48, par. 760E), the Federal tax here was not erroneously paid and this section is also inapplicable.

■ Defendant also suggests that it was not given sufficient notice that a reciprocal credit would not be applied against its State tax liability. Defendant did submit State tax returns for the periods at issue, but did not include payments therewith. Under these circumstances, its assumption that a reciprocal credit would be available was unwarranted. Defendant knew it owed both Federal and State taxes. It paid State taxes prior to 1975 and it was impliedly aware of the Federal tax credit. When it declined payment of its State taxes because of a "cash flow problem," defendant was obliged to determine the consequences of its action, which deviated from customary tax payment procedure. There is no record showing that defendant made any attempt to contact the State regarding these taxes prior to the instant action. Relevant Federal and State statutes demonstrate the lack of reciprocal credit and defendant's potential liability for the full amount of its Federal and State taxes. Defendant also is held to the knowledge that either the State or Federal authorities, or both, could act to forcibly collect their delinquent taxes.

Under the instant circumstances, the Act neither constitutes an impermissible double tax, nor does it deprive defendant of property without due process. We find no error.

## II

■ Defendant lastly contends that the collection of the State taxes assessed against it should have been enjoined. It maintains that equity will enjoin the collection of unauthorized or illegal taxes. (*Brown v. Jacobs* (1937), 367 Ill. 545, 549-50, 12 N.E.2d 10.) Defendant's State tax liability is authorized by the Act, however, and does not contravene any constitutional proscriptions.

Defendant urges further that the State tax collection should have been enjoined because it has no adequate remedy at law and might suffer irreparable harm. (See *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415, 417, 167 N.E.2d 236.) Defendant argues that even had it paid its State tax, it still could not obtain a refund of its "excess" Federal tax since the Federal statute of limitations governing refunds had expired. (I.R.C. sec. 6511(a) (1976).) Moreover, a State refund, available only where the State tax has been paid in full, was unavailable because the Director's determination and assessment were final. (Ill. Rev. Stat. 1983, ch. 48, par. 681.) The doctrine of ex-

haustion of administrative remedies does not control, since it appears that the Federal government did not forcibly collect its delinquent taxes until after the State tax determination and assessment had become final, and therefore defendant could not have raised the equitable issue in an administrative hearing. (*Chrysler Corp. v. Gunderson* (1979), 77 Ill. App. 3d 558, 560, 396 N.E.2d 101.) Consequently, it insists, absent an injunction, defendant would be required to pay its full State tax liability, a circumstance which could allegedly render it insolvent.

Notwithstanding the foregoing contentions, the State tax was not "illegal," "unauthorized," or procured by fraud, necessary requirements before equity will enjoin a tax collection, even in the presence of irreparable harm and an inadequate legal remedy. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05, 306 N.E.2d 299; *Commonwealth Edison Co. v. Tucker* (1980), 86 Ill. App. 3d 630, 634, 408 N.E.2d 364.) The circuit court did not err in denying defendant equitable relief.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

DOWNING and O'CONNOR, JJ., concur.