## Commonwealth et al. v. J. B. Jellico Coal Company et al.

(Decided May 22, 1928.)

JAMES H. JEFFRIES for appellants.

N. R. PATTERSON and L. C. KACKLEY for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

The White Log Jellico Coal Company being the owner in fee of 795 acres of coal land, on October 9, 1916, leased the property to the J. B. Jellico Coal Company for a term of 20 years on the royalty of 20 cents a ton of the coal mined, and it was provided in the lease that, if the lessee became bankrupt, the lease should terminate. The lessee took possession of the property and operated it. The lessor gave in for taxation its real estate, which was assessed to it at $30,000. It paid its taxes. The property held under the lease was assessed to the lessee at a valuation of $10,000, and it paid the taxes for some years. It failed, however, to pay the taxes upon the assessments which were made as of July 1, 1923, and July 1, 1924. In December, 1925, it became bankrupt, and in March, 1926, the White Log Jellico Coal Company leased the property to the Commodore Jellico Coal Company for a term of years for a royalty of 17 cents a ton. This suit was filed on November 1, 1926, by the commonwealth against the White Log Jellico Coal Company and the Commodore Jelico Coal Company to enforce a lien against the real estate in their hands for the taxes due by the J. B. Jellico Coal Company upon the assessments made of its property in 1923 and 1924. The defendants filed answer. setting up the facts above stated. The plaintiffs demurred to the answer. The court overruled the de-

murrer. The plaintiffs declined to plead further, and the circuit court dismissed the action. The plaintiffs appeal.

The only interest in the property held by the J. B. Jellico Coal Company was the rights acquired under its lease. This was the property assessed. Section 4021, Kentucky Statutes, provides:

> "The commonwealth, and each county, incorporated city, town or taxing district, shall have a lien on the property assessed for the taxes due them respectively (for five years) which shall not be defeated by gift, devise, sale, alienation, or any means whatever, unless the gift, devise, sale or alienation shall have been made for more than five years before the institution of proceedings to enforce the lien, and nothing shall be exempt from levy and sale for taxes and cost incident to the sale."

Under this statute, the lien of the commonwealth for the taxes is "on the property assessed." The property assessed was what was acquired by the lessee under the lease. When the lessee became bankrupt, the lease ended. The lessee had no more rights in the property after that than he would have had if the 20 years had expired on that day. He had a limited estate, and, when his estate terminated by the happening of the condition on which it depended, it was at an end, and there was nothing for the lien of the commonwealth to rest on. The Commodore Jellico Coal Company acquired nothing by its lease belonging to the J. B. Jellico Coal Company. The White Log Jellico Coal Company always owned the property subject to the lease, and, when the lease ended, it owned the property without any restriction upon its right. It did not then succeed to any right of the J. B. Jellico Coal Company. The rights of the J. B. Jellico Coal Company ceased when it became bankrupt. In Moss v. Board of Supervisors, 203 Ky. 813, 263 S. W. 368, it was held that the lessee in a case like this must give in his property under the lease for taxation. That case followed two previous cases holding the same thing. But the liability of the lessor for these taxes was not presented in that case. In American Railway Express Co. v. Com., 190 Ky. 636, 228 S. W. 433, 30 A. L. R. 543, it was held that, where one corporation conveys all its assets to another corporation, and thus practically ceases

to exist, without paying its debts, the purchasing corporation takes the property subject to an equitable lien for the debts. But that is not this case, for here the defendants took no right or property that belonged to the J. B. Jellico Coal Company. The rights of that company in the property simply ceased when it became bankrupt.

By section 4023, Kentucky Statutes, both the holder of the legal title and the life tenant are liable for the taxes. But as between themselves it shall be the duty of the life tenant to pay the taxes. So it was held in Joyes v. City of Louisville, 82 S. W. 432, 26 Ky. Law Rep. 713, that the remainderman was liable for the taxes assessed against the land during the lifetime of the life tenant. This was because the land was assessed and the taxes were made by the statute a lien on the land. But the Legislature has by section 4039 required the lessee of coal, oil, or gas privileges to list his property under the lease for taxation personally and to pay the taxes, thus providing for a different mode of assessment of this class of property. Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19. If the property had been sold for the taxes before the bankruptcy of the lessee, the purchaser at the tax sale would only have acquired the lessee's rights under the lease. The lessor by the bankruptcy of the lessee has lost the benefit of his lease, and has been compelled to rent the property for a lower royalty; but he is no more liable for the taxes due by the lessee now than he was before the lease expired. It requires a large amount of money to open and operate a coal mine. Engines and other machinery must be bought; a large amount of personal property must be collected. The assessment of the property of the lessee includes all this, and so the state's lien is confined to the property assessed.

Judgment affirmed.

Whole court sitting, Judges Thomas, Logan and Willis dissenting.

### Dissenting Opinion by Judge Thomas.

I regret that I find myself unable to agree with the court in the conclusions arrived at or the reasoning upon which they are based. If the question was of minor importance, and did not vitally affect the public by opening the door and making it possible for the commonwealth

to lose a substantial part of the revenue raised by taxation needed in the prosecution of the multiplied affairs of state, I might acquiesce, or at most content myself with merely registering my dissent without expressing my views. But, under the circumstances, I feel impressed with the duty of stating the reasons of my dissent without arguing or elaborating upon them, since a mere statement of them fulfills my purpose, and will be sufficiently convincing, I conclude, to the legal mind.

As is admitted in the opinion, the mineral lease involved had the effect to separate into two taxing units what was theretofore only one. Prior to the lease, it was the duty of the lessor, who was the owner of the entire piece of real estate, including the surface and all minerals under it, to assess the single unit at whatever was its reasonable market value, including the *right* to take coal therefrom, but which latter was by the lease transferred to the lessee, and it became his duty thereafter to assess it at its reasonable market value for the purpose of taxation as long as the *right,* first conferred upon him by the lease, lasted and remained separate from the fee. The original single unit for the purposes of taxation would be thus reduced by whatever was then the value of the right conferred by the lease. When the owners of such separated units of property for the purpose of taxation assessed them, it is my opinion that the commonwealth then became entitled to its lien and the right to enforce it, for the taxes arising from each of such assessments, and which together represented the whole value of the land, although as between the lessor and the lessee it was the duty of the latter to pay the taxes. When he by any means *forfeited* his right, which was an exclusive one, to take coal from the land, the unit that he had assessed for taxes did not thereby become extinct, but it only reverted, and went back to the lessor with whatever burdens the law in the meantime had put upon it, the same as if he, in any manner, had transferred it to a stranger. Such burdening law was in existence at the time the lease was made, and the lessor will be conclusively presumed to have made it with knowledge of it, and also, as I conclude, with knowledge of the right of the commonwealth to enforce the collection of its taxes as against that exclusive right which he had conferred upon the lessee by his voluntary lease, i. e., the new taxable unit that he thereby created, for the unexpired time

it had to run, and by which, as I have stated, the remaining portion of his land was relieved of taxation to the extent of that value. I do not concede to him, as does the opinion, the right to enter into a contract with his lessee whereby the latter, through his own derelictions in bringing about a forfeiture of the lease, may deprive the commonwealth of the right to collect its duly assessed taxes as against the separate unit created thereby. Of course, I do not contend that the commonwealth would have a lien on the right created by the lease for the *assessments* made *after* the term for which it was given expired, but I do contend that it has such lien for the unexpired term of the lease *at the time* the assessment was made.

Illustrating my position: If the lease is for 20 years, and the assessment is made, say, for the eighteenth year, there would then be 2 years within which the exclusive right created by the lease was separated from the fee and in the lessee, and it is my view that the commonwealth would have the right to enforce a lien against the value of such right for 2 years (being the unexpired time when assessed) for the purpose of collecting its taxes. As a natural consequence, it is my position, and to which I have hereinbefore adverted, that it is incompetent for the parties to provide for a situation, the happening of which will operate to deprive the commonwealth of its just taxes, and that position is upon the theory that, when the lease became forfeited by the derelictions of the lessee, the separate unit for the purposes of taxation created by it was not destroyed, but reverted under the terms of the contract, and became reinvested in the lessor, subject, however, to the right of the commonwealth to enforce its past-due taxes against that right the same as it could have done for the particular year as against the lessee. In other words, the merger did not destroy the lien, but only *lessee's* title to the property assessed by him.

Some supposed cases might serve to illustrate and elucidate my position: If one owning a vacant lot should contract with another whereby the latter was given the right to place improvements thereon, which he later did, and suppose that it thereby became the legal duty for the lessee, or improver of the lot, to assess and pay the taxes on such improvements, which assessment he made, but failed to pay the taxes. Then suppose that, because

of some provided method for a forfeiture, the owner of the lot acquired the title to the improvement after it was assessed, and by operation of the forfeiture the owner of the lot also became the owner of the improvement. Could it be logically contended that he would take it under the forfeiture free from the lien of the commonwealth for unpaid taxes because the title to it was transferred and became merged under the leasehold agreement into the holder of the title to the land? The only difference that I can draw between the illustrated case and the instant one is that the thing assessed in the former was corporeal property, while in the latter it is incorporeal property. In either case the property assessed was not, I repeat, destroyed because of the forfeiture, but only became the property of a new owner.

Further illustrating: Suppose that the lessor, in providing for a forfeiture, should stipulate that the right or interest procured by the lease in the event of a forfeiture should revert to a third person instead of to himself. Could it then be insisted that the right or interest would be held by such third person, in whom the forfeiture vested it, free from the lien of the commonwealth for taxes that had theretofore been assessed against it? If the opinion is correct, that question could only be answered in the affirmative upon the theory that, when the *lessee* became divested of *title,* the property thereunder, as well as his title, was totally destroyed as though it had been consumed by fire or by any other destructive agency. Surely, that position could not be sustained by logic, and it is my contention that the third person would take the right created by the lease burdened with the commonwealth's lien for accumulated taxes while it was owned by the lessee, the prior owner. If I am correct in that conclusion, I can draw no distinction between such supposed case and the one where the right reverts, not to a stranger, but to the lessor. It has the same value if he again becomes its owner through the operation of the forfeiture as if the third person became its owner through the same manner as in the supposed case. The lessee in assessing the mineral right put no greater or different burden on it than would have been borne by the lessor if no lease had been given.

Under the principles of the court's opinion, the same consequences would follow if there had been an outright sale of the minerals followed by a conveyance of the fee-

simple title, but in which conveyance there was contained a clause forfeiting the title upon the failure to perform a condition subsequent, since in that case there would be no more complete separation of the mineral title from the surface title, for the purposes of taxation, than the giving of a fixed lease term conveying such mineral right for the limited period; the duty of the mineral owner in the latter case to pay the taxes on his leasehold rights being imposed by statute in this jurisdiction, which in effect creates a separate estate in the lessee for the purposes of taxation for the full period of the lease the same as if the minerals had been purchased outright. The result of the opinion is to create the conditions wherein the dodger of taxes on mineral rights may join in the chorus, and joyfully sing: "This is the way I long have sought and mourned because I found it not," since all mineral leases that our statute requires to be assessed for taxation contain some character of forfeiture clause upon broken conditions subsequent. Under the principles announced in the opinion, all that is necessary to complete the defense to the right of the sovereignty to enforce its lien is for the lessee to breach the condition subsequent contained in his lease, followed by a reverter of his rights to the lessor who takes the then reconsolidated estate free of all taxes due on the mineral. The next day he can confer that right on another by executing a new lease, and the same process can be followed perpetually without the mineral right contributing anything to the public treasury for the support of the government.

I entertain no doubt but that the reasoning herein employed could be fortified by adjudications, and I am positively convinced that it is sustained by logic and fundamental principles of law and because thereof I must respectfully dissent from the opinion, and in which I am authorized to say that Judges Logan and Willis concur.

## DISSENTING OPINION BY JUDGE WILLIS.

I agree with what Judge Thomas has so well said in his dissenting opinion, but the decision of the majority is fraught with such importance that I deem it appropriate to say a few additional words.

The thing that was leased is the thing that was taxed. The tax was assessed, not on the estate of the *lessee* in the right, but on the right itself. The statute

creates a lien for the tax upon that right. It is intangible, but none the less real. Indeed, we have frequently declared that mineral leases consisting of mere intangible rights are real estate. Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323; Shadoin v. Sellars, 223 Ky. 751, 4 S. W. (2d) 717.

The lease involved in this case lapsed, or was forfeited, which extinguished the rights of the lessee, but the thing that was leased and assessed, and upon which the lien for taxes existed, endures, and the right of the commonwealth to proceed against that thing was not extinguished. The statute plainly says the tax lien shall not be defeated by "any means whatever." Section 4021. Ownership of the property changed, but the property continued intact. The tax lien is not lost, except by the statute of limitations, so long as the thing exists. Its transfer to another owner, whether by contract or operation of law, does not affect the lien of the commonwealth. The property passes to its new owner cum onere. The question as to how long the right to take coal from the property is in lien for the taxes is readily answered. It is coextensive with the taxing power. The tax is levied annually on a right to take coal, but the valuation of that right is measured by the unexpired term of the lease, with due consideration to the burdens of the lease and the forfeiture provision thereof, which might terminate it, if the obligations of the lease should not be performed. Its termination, however, is subject to the dominant right of the state to collect its taxes.

The right of forfeiture for nonperformance affects the value of the lease, but it does not affect the right of the commonwealth to a lien for its taxes on the right as it existed at the time it was taxed. When the tax debtor defaulted, the lien for taxes could be enforced by a sale of the same rights that were taxed; that is to say, the rights that existed in the lessee on the date the tax was levied. If that may be said to be an illusory remedy and of small value because no one would buy such a right at a tax sale, the answer is obvious. It is for the Legislature to provide a better security for taxes on intangibles. It is not for us to say that, because a precarious security is provided, none shall be enforced, but even the poor security that the commonwealth has shall be taken away.

The result of the majority decision is that property of substantial value escapes taxation. If the principle may be applied on a small scale, it may be applied on a large scale, and tax dodgers will not be slow to see the opportunity. The consequences of the precedent now made may prove most unfortunate. Suppose, for illustration, that a holder of a large coal area should lease his entire property to an irresponsible lessee on terms substantially similar to those contained in the lease here involved. The lessor would not be required to list the property for taxation, because he had leased it, and the holder of the lease alone would be required to list it. Moss v. Board, 203 Ky. 813, 263 S. W. 368. Two or three years later, when the taxes came due, the lessee would default, forfeit the lease, and thereby extinguish the commonwealth's remedy for the collection of taxes on a great boundary of coal rights of immense value. It already appears that the same right that was formerly held under lease, freed by the majority opinion of the taxes for two years, has been sold by the owner to another lessee. It is abhorrent to me that a landowner should be allowed to lease, reclaim, and again lease his mineral property for profit, and yet the state be disabled from enforcing its tax lien on the subject-matter of the transaction.

The majority opinion says that the lessee "had a limited estate, and, when his estate terminated by the happening of the condition on which it depended, it was at an end, and there was nothing for the lien of the commonwealth to rest on." Within that plausible pronouncement is contained the seeds of fallacy and error that have produced a wrong result. It is not the "limited estate" of the lessee that is the subject of the tax and the lien. If so, the reasoning would be sound. The tax is levied, and the lien to secure it is created on the identical property out of which the lessor carved and conferred on the lessee the "limited estate." That property, which was the subject-matter of both the lease and the lien for taxes, has not vanished. When the lease was granted, it operated as a severance of the mineral estate, and created a separate taxable unit. Com. v. Garrett, 202 Ky. 548; Moss v. Board of Supervisors, 203 Ky. 813, 263 S. W. 368; Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19. When the lease lapsed, that mineral

estate merged again in the fee, and was subject to a repeated severance. But its merger with the fee did not destroy the lien for taxes. The commonwealth could follow the property (Martin v. City of Lexington, 183 Ky. 714, 210 S. W. 483), even though it was commingled with other property and its identity lost.

In Middendorf v. Gooddale, 202 Ky. 118, 259 S. W. 59, the court quoted section 171 of the Constitution, and said:

> "The property tax is ordinarily an ad valorem tax, but whatever its form, it is levied by virtue of an assessment, and payable annually; that is, a tax which must be paid, on the property subject to taxation, by the owner, year by year; and this annual burden of taxation will rest on the property so long as it exists and remains within the territorial limits of the authority levying the tax. And this would be so, even if the ownership of the property were changed, as in that event the tax would have to be paid by the person owning it when the tax was assessed and levied. It is likewise true of the property tax that its payment is not optional with the person against whom, or whose property, it is assessed. Its payment is compulsory and if not voluntarily made in a given time, the property taxed may, after the necessary advertisement, be summarily seized and sold by the tax collector for the tax due and costs of sale, together with the penalty imposed by the statute for its nonpayment within the required period."

I am utterly unable to reconcile the reasoning thus lucidly expressed with the rationale of the majority opinion. If the statute had distinctly provided that the owner of the reversion in cases where the reverter had occurred should be liable for the taxes, I cannot see that the right would be any clearer. The power of the state te .enact such a law cannot be doubted. That the existing law is equal to that seems to be the plain import of the present statute.

Judges Thomas and Logan concur.