# Louisville Title Mortgage Co. v. Commonwealth ex rel. Unemployment Compensation Commission.

Nov. 10, 1944.

As Modified on Denial of Rehearing

Jan. 19, 1945.

Leo T. Wolford and Elliott Lee Maddox for appellant.

H. Kelly Clore, O. B. Hannah and E. B. Thompson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The case involves the important question of the status or rank of a lien on property to secure the payment of an employer's "contributions" to the Unemployment Insurance Fund, the contributions being regarded as an excise tax. Kentucky Revised Statutes 341.010 et sep.; 42 U. S. C. A. secs. 1004, 1101; Shaw v. Kentucky Unemployment Compensation Commission, 297 Ky. 815, 181 S. W. 2d 697; 48 Am. Jur., Social Security, Unemployment Insurance, etc., secs. 4, 32. The trial court adjudged the Unemployment Compensation Commission to have such lien, first and prior to all liens except those securing State, County and City ad valorem taxes, with which it was placed as of equal rank. The claim of the Commission, which sues as relator of the Commonwealth, rests upon the specific terms of the Unemployment Compensation Statutes and the statutes relating to liens for taxes generally. The judgment is for $1,946.48, being the aggregate of sums due over the course of five years and penalties thereon. Because both the statutes of general and particular application were amended several times during the period, it is necessary that each of them be considered somewhat separately.

The appellant, P. A. Goodman, became subject to the Unemployment Compensation Law as an employer when it first became operative or effective on January 1, 1937. Chapter 7, Acts of the Fourth Extraordinary Session of 1936-37. He purchased and received a conveyance of the property in which he conducted his business, and that upon which the tax lien is adjudged, on April 3, 1937. It was subject to a vendor's lien which is now owned by the appellant, Louisville Title Mortgage Company. The first of the contributions did not become due and payable until August 31, 1937. The last are for the quarter ending December 31, 1941.

The first Unemployment Compensation Act (Act of 1936, supra) provided for the collection of the contributions with penalties by civil suit after notice, but did not declare a lien on the employer's property as security. It did provide that in case of distribution of the employer's assets pursuant to an order of court by reason of insolvency or a similar condition, the claim of the Commission should be paid in full "prior to all other claims except taxes but on a parity with claims for

wages," as described, and prior awards under the Workmen's Compensation Act. Section 14 (c). The claim of a lien for the period during which this Act was operative (which was until March 5, 1938) does not rest upon that Act but rests upon Chapter 21, Section 9, enacted at the same Fourth Extraordinary Session of 1936 (effective January 18, 1937; Section 4257a-7, Kentucky Statutes, 1939 Supplement), which declared that the Commonwealth shall have a lien superior to all other liens upon all property of every kind owned by the taxpayer at the time the property or he "becomes subject to the tax, for any property tax, license tax, inheritance or estate tax, excise tax or income tax against which no exemptions shall be pleaded."

This entire chapter deals with the collection by the Department of Revenue of taxes generally or upon omitted assessments of property. According to the title, it repealed and amended sections of the statutes relating to revenue agents and the retroactive assessment and collection of delinquent taxes by the Department of Revenue. It did not purport to amend Section 4021, Kentucky Statutes, which gave to the "Commonwealth, and each county, incorporated city, town or taxing district" a lien for five years on property assessed for taxes due them respectively. It is true there is a general blanket provision in Section 10 of the 1936 Act that "All laws or parts of laws in conflict hereby (sic) are repealed." But this cannot be construed to have such far-reaching effect as to place in lien every species of property owned by a taxpayer for every species of tax, particularly for unemployment compensation contributions or tax, which was then dealt with in another statute, complete in itself, and made collectible both when due and when delinquent by the Unemployment Compensation Commission and not by the Department of Revenue. By not lodging the duty of collecting these contributions in the Revenue Department the legislature recognized that, though regarded as an excise tax, it is of a peculiar character, being for a special insurance fund for the security of specified classes of employees.

This construction of nonapplicability of the general statute is fortified by the later enactment of Chapter 180 of the Acts of 1940, which did repeal and re-enact Section 4021 of the Statutes and otherwise made an elaborate revision of the tax collecting statutes. Section

4021, Kentucky Statutes, 1941 Supplement. In it the powers and duties of local officers and the Department of Revenue are defined. This Act repealed, amended and re-enacted Section 9 of Chapter 21 of the Fourth Extraordinary Session of 1936, Section 4257a-7, Kentucky Statutes Supp. 1939, quoted above. It did specify: "The Commonwealth shall have a lien of equal rank and dignity to the lien provided in section 2 of this Act on all property of a taxpayer who owes any property tax, license tax, inheritance or estate tax, excise tax, income tax, or other tax, when such taxes are not included in or covered by the lien provided in section 2 of this Act. Said lien shall accrue at the time the liability becomes fixed. The Department of Revenue may file notice of same with the county court clerk of any county where the taxpayer has property, giving the name of the taxpayer, his address, and the amount of the lien. The clerk shall file same in the same manner as lis pendens are filed, and the file shall be designated 'Miscellaneous State Tax Liens.' The notice, when so filed, shall be constructive notice to all persons of the lien on the property having a legal situs in that county, except that nothing in this Act shall be construed to alter or change in any way the law relative to the rights and duties of a holder in due course as provided in sections 3720b-1 to 3720c, Carroll's Kentucky Statutes, Baldwin's 1936 Revision, or affect the rights of any person taking the property or a lien thereon for value without actual or constructive notice."

It is to be noted that Section 2 of the amendatory Act (Section 4021, Kentucky Statutes, 1941 Supplement) referred only to the assessment of property and only to the duties of the Department of Revenue. That the broad language of Section 9, Chapter 21, Acts of 1936, declaring a superior lien, without qualification upon all property for "any property tax, license tax, inheritance or estate tax, excise tax or income tax" was never intended to put the lien in the same category as ad valorem property taxes is made apparent by the qualification added in the 1940 Act. Section 20 (Section 4257a-7, Kentucky Statutes, 1941 Supplement) made the liens for other taxes of equal dignity but protected a bona fide or innocent purchaser or "a holder in due course" until the notice of the lien should be filed "in the same manner as lis pendens are filed."

The 1940 Act was re-enacted in 1942 in two sections in the adoption of the Kentucky Revised Statutes, namely, 132.290 and 134.420.

We are sure, therefore, that the claim of a lien on the employer's property superior to the appellee's vendor's lien has not been given by the laws relating to tax liens generally.

We return to the consideration of the Unemployment Compensation Act and its provisions.

As we have shown, the original Act, that of 1936, did not impress a lien upon the property of an employer but provided only in the event of insolvency, receivership or distribution of his assets pursuant to an order of court, the obligation should be on a parity with unpaid wages and workmen's compensation awards. The superseding Act of 1938, Chapter 50 (Section 4748g-1 et seq., Kentucky Statutes, 1939 Supplement), continued in effect from March 5, 1938, to April 1, 1940. Section 8 of the Act (Section 4748g-8, Kentucky Statutes Supp. 1939) made provision for the collection of contributions and the prescribed penalty by a civil action in the name of the state. The only lien provided was that in the event of liquidation of the employer's assets under order of court, the Commission "shall have a lien superior to all other liens except liens for taxes, upon all property, real, personal and mixed, tangible and intangible, owned by such employer at the time such employer becomes subject to the payments of contributions, against which lien no exemption shall be pleaded." See Commonwealth v. Durham, 290 Ky. 408, 161 S. W. 2d 610, 140 A. L. R. 1040. Since there was no such eventuality or distribution of this employer's assets, it is apparent that there was no lien on his property to cover his obligation for that period under current statutes.

In 1940, the Unemployment Compensation Act was again re-written in a large degree. The new Act (Chapter 193, Acts of 1940) became effective April 1, 1940, although some of its provisions were made applicable as of January 1, 1940. It repealed, amended and re-enacted Section 4748g-8, Kentucky Statutes Supp. 1939, above quoted (see Section 4748g-8, Kentucky Statutes, 1941 Supplement). This did away with the provision for a lien only in the event of the distribution of the employer's assets in the manner stated. It was much broader.

The 1940 Act declared that "a lien on a parity with tax liens" for contributions, interest and penalties should exist from the time such obligations became due in favor of the Unemployment Compensation Commission upon all property owned by the employer, "used by him in connection with his trade, occupation, profession or business, from whom contributions, interest or penalties are or may hereafter become due." However, it provided that such lien should not be valid as against any innocent purchaser for value of the employer's stock in trade and: "Such lien shall be invalid against any innocent purchaser of any of the other assets to which such lien has attached, unless notice thereof has been filed by the Commission in the office of the County Court Clerk of the county within which the property subject to the lien is situated." The following subsection described the contents and manner of filing the notice.

KRS 341.310 (Chapter 19, Section 6, Acts of 1942) is in substantially the same language and has the same intent and meaning. In this case the Commission filed such a notice on July 27, 1940, and instituted the suit in April 1942. We may assume for the purpose of this case that the lien created by the 1940 Act embraced past due contributions as well as those becoming due in the future. See In re Auto Electric Repair & Parts Co., D. C., 41 F. Supp. 3. The question is whether it is to be given priority over contractual liens created before the tax became due or the notice was filed.

From time immemorial a lien for ad valorem taxes has overreached and been prior to any kind of contract or statutory lien, including a vendor's lien (Husbands v. City of Paducah, 5 Ky. Law Rep. 193), and it has never been required that notice of such tax lien be given in order to make it paramount. There is always available the record of assessments and levy, so that the amount is easily ascertained and anticipated under all circumstances. Purchasers and mortgagees may protect themselves. KRS 134.420 (1). But it is significant that by the Act of 1940, Chapter 180, Section 2, (which is carried into the Revised Statutes of 1942 as Section 132.290 (2) when there has been a retrospective assessment of omitted tangible property, "the lien thereby accruing shall not prejudice the rights of bona fide purchasers acquired in the meantime." Such a retroactive assessment cannot be anticipated and fairness demands notice. So it is also

under KRS 134.420(2) (the original Act being Chapter 180, Section 20, Act of 1940) that the lien for other taxes, including "license tax, inheritance or estate tax, excise tax, income tax, or other tax", is by implication, at least, made subordinate to other liens until constructive notice shall have been given by the filing of the described notice in the county court clerk's office and shall not be deemed to affect the adverse rights of innocent purchasers for value. The provisions for notice in these two instances would seem to be in recognition of the fact that the liability for the taxes is not readily ascertainable. In the case of an income tax it is concealed under penalty of law for disclosure. Section 4114h-15, Kentucky Statutes; KRS 131.190. The provision for the giving of notice under the Unemployment Compensation Act rests upon the same ground. The records of the Commission are not open to the public for inspection, and publication or disclosure is penalized. KRS 341.190, 341.990.

Traditionally, general taxes on property constitute a superior lien because of the reciprocity between taxation of property and the protection extended by the government. They are the foundation of the tax structure and of paramount rank. As to other taxes, the courts are not in accord as to the necessity of the statutes expressly declaring priority. 61 C. J. 925. We do not seem to have hitherto expressed an opinion on the question. We think the preference or priority of other classes of taxes is always a question of legislative intent. 51 Am. Jur., Taxation, sec. 1017. It should be especially clear that such was the intent where the tax is of a special character to raise funds which do not go into the treasury for the general purposes of the government. Undoubtedly, the state, under its inherent sovereign power, may confer priority of taxes over other rights, but no Act should be construed to do so unless the language used compels it. If the provision is in general terms, priority will not be given a retroactive effect so as to make the lien superior to liens existing at the time of enactment or to bona fide conveyances or transfers. 51 Am. Jur., Taxation, sec. 1016. As to the Unemployment Compensation Act, we think it is clear that it was never intended by the Legislature that the lien for these special contributions or taxes should cut off or impair the fixed rights of innocent third persons or pre-existing liens. But literally these provisions are perspective only and deal with liens acquired after the tax became due or

accrued. They protect subsequent liens unless and until the constructive notice shall be given. We have in this case a pre-existing lien. As it pertains to taxation, the Act is to be strictly construed. Barnes v. Indian Refining Company, 280 Ky. 811, 134 S. W. 2d 620. It would be an unreasonable construction to say the provision for the giving of constructive notice was for the protection only of a purchaser or mortgagee who acquired the property or a lien on it subsequent to the date the contribution tax accrued and became payable, but affords no protection to a pre-existing lien or right. It would be more unreasonable to construe it as denying priority to a vendor's lien, for the title of the employer to the property was subject to it—an equity he never did have. We held in Unemployment Compensation Commission v. Louisville Title Insurance Company, 293 Ky. 214, 168 S. W. 2d 377, that the lien does not attach to property acquired after the tax accrued.

If the construction contended for by the Commission should be the proper one, the result would be that the title to an employer's property remains under a cloud until the claim is barred by limitation, for neither he nor anyone with whom he deals could know that at some future date there would not be a retroactive assessment of unemployment compensation taxes. The amount payable is variable and subject to adjustment and additional charges and its computation involves several changeable factors. By a parity of reasoning it would have to be held that KRS 134.420(2) is subject to the same construction. The consequences would be that all property of every citizen who might become liable for an income, license, inheritance, excise or any other species of tax is in lien always to the Commonwealth for an unknown and unknowable sum, and no one could clear it. Vendors, purchasers and lenders of money upon mortgage would have their rights subordinated, however innocent they might be. It is not believed that so radical an idea was in the mind of the Legislature. The policy of the law to protect bona fide purchasers and lienees is too firmly imbedded in our Bill of Rights, our statutes, our common law and our jurisprudence to be partially extracted by an interpretation of an ambiguous legislative act which would make the statute retrospective and the lien retroactive. We, therefore, construe the statutes to mean that the rights of innocent purchasers of a subject-employer's property used in his business, and bona fide liens ex-

isting before the notice of the lien for security contributions or tax as prescribed by the Act of 1940, supra, and KRS 341.310(2), are not subordinate or inferior to the lien created by the Act.

We think the court should have adjudged the Commission's lien and claim inferior, first to the ad valorem tax lien, then the vendor's lien of the appellant, Louisville Title Mortgage Company. The judgment is, therefore, reversed with directions so to do.

Whole Court sitting.