**LIBERTY NATIONAL BANK AND TRUST COMPANY OF LOUIS-VILLE, Appellant,**

v.

**Frank J. VANDERKRAATS; Virginia Vanderkraats; The Cumberland Federal Savings Bank (Formerly Avery Federal Savings and Loan Association); PNC Bank, Kentucky, Inc. (Formerly Citizens Fidelity Bank and Trust Company); Revenue Cabinet, Commonwealth of Kentucky; Internal Revenue Service, United States of America and Wathen Spalding, Appellees.**

No. 94–CA–001329–MR.

Court of Appeals of Kentucky.

June 9, 1995.

**512**

Lisa Koch Bryant, David W. Gray, Katherine Gail Russell, Louisville, for appellant.

Dennis J. Stilger, Louisville, for appellee, Frank Vanderkraats.

Virginia Vanderkraats, Louisville, pro se.

William K. Sparks, Louisville, for appellee, Cumberland Federal Sav. Bank (Formerly Avery Federal etc.).

Edward L. Galloway, Louisville, for appellee, PNC Bank, Kentucky, Inc. (Formerly Citizens Fidelity etc.).

Barbara Curtin Kenney, Frankfort, for appellee, Revenue Cabinet, Com. of Ky.

Michael F. Spalding, Louisville, for appellee, I.R.S., U.S. of America.

Scott A. Simon, Louisville, for appellee, Wathen Spalding.

Before COMBS, GUDGEL and SCHRODER, JJ.

SCHRODER, Judge:

This case arises out of a mortgage foreclosure which interpreted KRS 134.420 as affording the Commonwealth priority for tax liens ahead of the mortgagee where part of the tax liability was assessed after the recording of the mortgage.

A condensed version of the facts is that on September 15, 1976, the appellees, Frank and Virginia Vanderkraats (Taxpayers) purchased a home (Premises) in Jefferson County. The Taxpayers received a $108,613.14 loan on June 6, 1990 from appellant which was secured by a mortgage on the premises. At the time the mortgage was recorded, appellant was aware of five tax liens for assessments totaling $7,939.91 (as confirmed by appellee, Revenue Cabinet). After the mortgage was recorded, up until November 30, 1992, the Revenue Cabinet continued to assess additional taxes, and filed seven more liens based on assessments totaling $18,691.83. After the Taxpayers filed bankruptcy and there weren't sufficient assets to go around, the appellant and the Revenue Cabinet disagreed as to priority of those assessments filed *after* the mortgage was recorded.

The trial court held that under KRS 134.420(4), the recording of a tax lien before the mortgage would put the appellant on notice of all prior and *future* assessments against the Taxpayers, resulting in priority to the Revenue Cabinet. On appeal, appellant contends that KRS 134.420(4) is directed only to relieving the Commonwealth from filing subsequent notices for later assessed taxes due prior to the mortgage, but that the lien itself does not attach until assessed. The Revenue Cabinet on the other hand, contends that under the same statute, the first tax lien filed by the Cabinet creates priority for all taxes due or subsequently due or assessed against the taxpayer until *all* subsequent deficiencies are satisfied. We agree with the trial court's interpretation of the 1990 version of the statute.

The circuit court applied the 1990 version of KRS 134.420 to the facts in this case without objection. The prehearing statement asks for an interpretation of KRS 134.420 to determine priorities and does not specify that other than the current version is to be reviewed. The Revenue Cabinet's supplemental prehearing statement also neglects to specify the interpretation of the 1982 version of the statute as an issue. Application of the 1990 version instead of the 1982 version of KRS 134.420 was not preserved for appeal. *Weissinger v. Mannini*, Ky., 311 S.W.2d 199 (1958). Even if an objection had been made to the trial court, we doubt if the result would have been different because the assessment in question arose *after* the 1990 mortgage, and *after* the effective date of the 1990 statutory enforcement procedure.

KRS 134.420(4) reads:

*The tax lien* imposed by subsection (2) of this section *shall not be valid* as against any · purchaser, judgment lien creditor, or

holder of a security interest or mechanic's lien *until notice of the tax lien has been filed* by the secretary of the Revenue Cabinet or his delegate with the county clerk of any county or counties in which the taxpayer's business or residence is located, or in any county in which the taxpayer has an interest in property. *The recording* of the tax lien *shall constitute notice of both the original assessment and all subsequent assessments* of liability against the same taxpayer. Upon request, the Revenue Cabinet shall disclose the specific amount of liability at a given date to any interested party legally entitled to the information. (Emphasis added.)

The appellant contends the trial court erred in equating the notice of a lien with the lien itself. That is not what the trial court or the statute says. Under KRS 134.420(2), any time a person fails to pay any tax, a lien immediately arises and is attached to all property owned or subsequently acquired by the taxpayer. Section (4) above speaks in terms of this lien being valid or invalid against a bona fide mortgagee. In effect, section (4) is creating priorities, that is, a lien attaches immediately to all property, but until notice thereof is filed, a bona fide purchaser, etc. is given priority. Once notice is filed, however, the Revenue Cabinet has priority.

■ Appellant contends that notice of a lien which covers future assessments is an attempt to cover a lien that doesn't yet exist, and therefore is not valid against a mortgagee whose lien previously attached. If section (4) of KRS 134.420 were strictly a lien imposition statute, we would agree. However, considering section (4) in light of section (2), we see that section (4) is indeed a *priority* statute. True, a lien didn't exist for unpaid future taxes or assessments at the time the mortgage was executed, but notice was given that any future assessments, if any, would be given priority over subsequent mortgages *unless* all previous assessments and liens were cleared up *before* the mortgage was filed. In a priority sense, this is no different than when a lis pendens notice under KRS 382.440 is filed at the beginning of a suit and before a judgment lien attaches. Subsequent mortgagees, etc., find their priorities *follow* a subsequent lien by a holder of the lis pendens notice. Ad valorem taxes assessed *after* a duly recorded mortgage do not become liens until assessed but are given priority over mortgagees. *See* KRS 132.020, 134.020, 134.470, *Commonwealth v. J.B. Jellico Coal Co.,* 227 Ky. 273, 12 S.W.2d 698 (1928) and *Midland–Guardian Co. v. McElroy,* Ky. App., 563 S.W.2d 752 (1978).

Even in the private sector, a notice in a mortgage that the lien covers the amount loaned, plus possible future advances, has been held to grant priority to the future advances against a lien filed after the initial mortgage but *before* the advances. *See* KRS 382.520(2) and KRS 335.9–204(3).

■ Appellant also argues that the trial court's interpretation (which gave "after assessed" taxes priority) would unwisely burden commerce. Suffice is it to say, the *legislature* has the power to create statutory liens *and* to establish the priorities thereof, including the power to grant priority or superiority to tax liens over bona fide conveyances or encumbrances. *Louisville Title Mtg. Co. v. Commonwealth,* 299 Ky. 224, 184 S.W.2d 963 (1944); *Midland–Guardian Co. v. McElroy, supra.* Also, as the trial court noted, "[p]laintiff could have probated [sic] itself by requiring satisfaction of the Revenue Cabinet's filed lien before extending credit to the debtor. All parties agree this would have extinguished the state priority claim."

Accordingly, the judgment of the Jefferson Circuit Court is affirmed.

All concur.