## QUALITY COAL CO. v. UNITED STATES.
### Civ. A. No. 527.

District Court, W. D. Arkansas,
Fort Smith Division.

June 3, 1946.

Harper & Harper, of Fort Smith, Ark., for plaintiff.

Charles A. Beasley, Asst. U. S. Atty., of Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

Plaintiff is a corporation duly organized under the laws of the State of Arkansas, and at all times material to the present proceeding was engaged in mining and selling coal, and employed more than eight persons. As such it was subject to the state Unemployment Compensation Law, Act 155 of 1937, Acts of Arkansas, Pope's Digest of the Statutes of Arkansas, Section 8549

et seq., and to the tax imposed by Title IX of the Social Security Act of 1935, 42 U.S.C.A. § 1101 et seq., as amended by 26 U.S.C.A. Int.Rev.Code, § 1600 et seq.

For the years 1938, 1939 and 1940,[1] plaintiff was subject to a federal excise tax of 3 per cent of the total wages paid by it to employees covered by the Social Security Act. Credits against this tax up to 90 per cent of the total might be claimed if the state adopted an unemployment compensation law which met certain requirements set up in the Social Security Act.[2] For the years in question there was in effect in the State of Arkansas such an approved law[3] which levied an excise tax of 2.7 per cent with respect to wages paid to employees.[4]

In 1938, 1939 and 1940 the plaintiff filed with the Collector of Internal Revenue returns showing the total wages paid to covered employees, claiming a credit for sums paid under the approved state unemployment compensation law equal to 2.7 per cent of the total wages, and showing a liability to the federal government for a sum equal to .3 per cent of the total wages paid. The latter amount was paid in full for each of the years in question.

Actually the plaintiff paid into the state fund only a small part of the contribution due in 1938, and made no payments whatever for the years 1939 and 1940. On February 2, 1941 the Commissioner of Labor of the State of Arkansas filed his certificate of assessment against the plaintiff in the manner provided by law in the Circuit Court of Franklin County, Arkansas, and judgment covering the delinquent contributions for 1938, 1939 and the first two quarters of 1940 was entered. Subsequently the plaintiff became delinquent for the last two quarters of 1940.

On September 23, 1941 plaintiff effected a compromise of its debt of $9679.55 to the state by paying to the Unemployment Compensation Division the sum of $4839.78. The smaller sum was accepted by the state as full settlement of the delinquent contributions, and the judgment against plaintiff was shown as satisfied in full. The plaintiff's president testified that the settlement was effected to avoid bankrupting the company, and that when the agreement was made, the chief of the Employment Security Division of the state represented that the settlement extinguished all of the company's liability.

The Employment Security Division of the state certified the payment, apportioned to the respective years, to the Internal Revenue Commissioner, and on the basis of the actual amounts paid to the state, the plaintiff's federal tax liability was recomputed for each year in question, interest and penalties being added for delinquent amounts. The assessments were paid under protest on April 19, 1943, and on May 20, 1943 plaintiff filed claim for refund which was denied by letter dated June 21, 1943.

On June 21, 1945 plaintiff filed its complaint in this court seeking to recover the amounts of the additional assessments on the ground that they were erroneously assessed and wrongfully collected. The theory of plaintiff's claim is that it is entitled to full credit for the amount of contributions assessed by the state; that even though the state received only 50 per cent of the amount actually due it, it agreed to accept this sum in full satisfaction of its claim. The state having entered on its records full satisfaction of the plaintiff's debt, the federal tax authorities cannot go behind this agreement and notice that only one-half of the contribution was in fact paid.

The defendant answered that the assessments were made in accordance with the applicable provisions of the Social Security and Internal Revenue Acts. Defendant's contention is that the federal acts allow credit against the federal tax only for the amounts actually paid into the state fund, and that the Internal Revenue Commissioner was not bound by a compromise to which he was not a party.

The cause was submitted to the court on the ore tenus testimony of plaintiff's presi-

[1] For 1938, 42 U.S.C.A. § 1101 (3). For 1939 and 1940, 26 U.S.C.A. § 1600.
[2] For 1938, 42 U.S.C.A. § 1102. For 1939 and 1940, 26 U.S.C.A. § 1601 (a) (1).
[3] Act 155 of 1937, Acts of Arkansas, Pope's Digest, § 8549 et seq.
[4] Id., Section 7 (b) (2).

dent, stipulations of fact prepared by counsel, and briefs in support of their respective contentions.

The sole issue presented by the pleadings is whether a taxpayer who compromises its undisputed liability under a state unemployment compensation law by paying 50 per cent of the contribution levied by such law and obtaining a receipt showing satisfaction in full is entitled to credit against its federal tax liability under Title IX of the Social Security Act for the full amount assessed by the state law.

Plaintiff argues that the state officials should have certified to the Internal Revenue Commissioner that the state's claim was paid in full, instead of merely certifying the amounts actually paid; that nothing in the Social Security Act prohibits the state from making compromise settlements; that a voluntary compromise satisfies in full the claim out of which it grows; that this court should hold that the federal government is bound not by what the state certified as having been paid, but by what the state gave satisfaction of, viz., the full amounts due the state at the rate of 2.7 per cent for the years in question. Further the plaintiff contends that to deny the taxpayer full credit defeats the purpose of the compromise, and points out that any additional tax which plaintiff may be forced to pay to the federal government will not inure to the benefit of the state unemployment compensation fund.

The solution of this novel question becomes simple when the basic plan of the legislation here involved is understood. In 1935 Congress enacted an excise tax to be levied on employers of eight or more persons. 42 U.S.C.A. § 1101 et seq. The rate of the exaction was ultimately to be 3 per cent of the total wages paid to covered employees.

To encourage the states to shoulder the principal administrative functions essential to handling the local aspects of the unemployment problem, the act provided that the amount of contributions paid by the taxpayer into an unemployment fund under a state law might be credited against the tax imposed by the federal act, up to a maximum of 90 per cent of such tax. 42 U.S.C.A. § 1102. If the state failed to provide for an unemployment fund, the taxpayer would pay the entire 3 per cent levy into the federal treasury. Or if the state levied a tax of less than 2.7 per cent of the total wages paid by a covered employer, the taxpayer would pay into the federal treasury the difference between the state exaction and 3 per cent.

■ Although closely complementary, the federal unemployment tax and the state unemployment tax are distinct and separate. Shaw v. Kentucky Unemployment Compensation Commission, 297 Ky. 815, 181 S.W.2d 697. Either can exist and function without the other. They represent independent acts of two distinct legislative bodies.

■■ It follows that each act may be administered and interpreted by the respective officials within the limits of their granted powers. If the State of Arkansas authorizes its commissioner to compromise liquidated tax liabilities, he may undoubtedly do so. On the other hand, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, is authorized to make and publish rules and regulations for the enforcement and administration of the provisions of the federal law here involved. 42 U.S.C.A. § 1108, now 26 U.S.C.A. Int.Rev.Code, § 1609. Since the credit for contributions to the state fund is applied against the federal tax, and is a matter of federal law, the Commissioner of Internal Revenue is the official empowered to decide what sums shall be allowed as credit.

The old [5] and the new [6] sections of the federal act allowing credit are, for present purposes, identical. The section allows for credit "the amount of contributions paid by him into an unemployment fund" [7] maintained by the state. Under the authority conferred on him by 42 U.S.C.A. § 1108, the Commissioner on February 17, 1936 published regulations governing the granting of credit.

The pertinent part of these regulations provides: "Credit against the tax for con-

---

[5] 42 U.S.C.A. § 1102.
[6] 26 U.S.C.A. Int.Rev.Code, § 1601.

[7] Id.

tributions paid into State unemployment funds shall not be allowed unless the taxpayer claiming such credit shall have submitted to the Commissioner: (a) A certificate of the proper officer of each State * * * showing (1) the total amount of required contributions (exclusive of penalties and interest) *actually paid* under each law of the state * * *." (Emphasis added.) 26 C.F.R. § [Sec.] 400.212, p. 1770. Subsequent amendments of the statute and the regulations wrought no change in this requirement. Thus in 26 C.F.R., 1939 Supp., § 400.211(b) it is provided: "The allowance of contributions as credit against the tax for the calendar year 1936, 1937 or 1938 is subject to the following limitations: * * * (2) The contributions must have been *actually paid* into the State unemployment fund. * * *" (Emphasis added.) See identical provision governing credit for subsequent years in 26 C.F.R., 1939 Supp., § 400.211a(b) (2).

■ Thus there is no question but that the credit allowed in the federal act is granted only for amounts actually paid into the state fund. Credit is not granted on the basis of the contribution levied, but not collected, under the state law. True the state is not precluded from compromising its claim, but it cannot by such act entitle the taxpayer to credit against his federal tax for unpaid contributions.

The taxpayer should not have been misled by assertions to the contrary. Form 940 on which its return was filed each year reads as follows: "5. Less: Credit for contributions actually paid into State unemployment funds * * *", and on the returns for 1938 and 1939 the taxpayer's attention was directed to instructions which read in part: "The contributions must have been actually paid into the State unemployment fund * * *."

Apart from the very clear regulations recited above, the same interpretation of the statute would obtain as a matter of policy. The purpose of Title IX of the Social Security Act was to create a fund for the relief of the unemployed. As stated by Mr. Justice Byrnes in United States v. New York, 315 U.S. 510, 316 U.S. 643, 62 S.Ct. 712, 715, 86 L.Ed. 998, "Either the state or the federal government must provide money to meet the requirements of relief to the unemployed. By his contributions to the state, an employer has diminished the demand upon the financial resources of the federal government. But by his failure to contribute, the employer has increased this demand and sharpened the necessity for obtaining the revenues required to satisfy it." The substantial interest of the federal government is that the state receive a certain sum of money, not that it impose a certain tax liability. If a state by compromising the liability of employers can also preclude the federal government from demanding the exaction contemplated by the statute, it is in a position to defeat the purpose of the statute.

However desirable it may seem in certain instances to lighten the burden on the backs of bilious businesses, the state commissioner could scarcely certify that the contribution was paid in full when his accounts with the United States Treasury showed a lesser sum deposited.

■■ Nor can the state commissioner bind the federal commissioner by representations that a compromise of the state claim extinguishes liability to the federal government, anymore than the federal commissioner can foreclose the state official. Shaw v. Kentucky Unemployment Compensation Commission, supra. Furthermore, in the present case the federal authorities were not parties to the compromise, hence would not be bound thereby, assuming for argument that they could or would under any circumstances agree to such an arrangement. 15 C.J.S., Compromise and Settlement, § 28, p. 747.

It follows that the Internal Revenue Commissioner properly levied the additional assessment, and that the plaintiff is not entitled to recover the amount paid on said assessment.

Judgment will be entered dismissing the complaint, and costs will be assessed against the plaintiff.